Philloria **GREEN**

v.

**Winston Murphy BRYANT, Jr., d/b/a Medical & Surgical Eye Associates.**

**Civ. A. No. 94–4205.**

United States District Court, E.D. Pennsylvania.

May 31, 1995.

Joshua P. Rubinsky, Philadelphia, PA, for plaintiff.

Gary M. Tocci and William H. Brown, III, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

The primary question in this case is whether Pennsylvania's public policy protects an at-will employee who is the victim of spousal abuse from discharge by her employer. For the reasons stated below, I find that it does not.

### I. FACTS

Defendant, Dr. Winston Murphy Bryant, employed plaintiff, Philloria Green, from December 1992 through August 1993. Plaintiff asserts that during her last week of work, her estranged husband raped and severely beat her with a pipe at gun point.[1] She received medical treatment and returned to work shortly thereafter. Ms. Green informed another doctor in the office about the attack. The doctor informed defendant, who then terminated plaintiff's employment. Ms. Green asserts that Dr. Bryant told her that the discharge had nothing to do with plaintiff's performance at work, but was based solely upon her being the victim of a violent crime.[2] Plaintiff alleges that defendant retroactively terminated her health insurance so that none of her medical expenses were covered. She also alleges that she has suffered migraine headaches and post-traumatic stress disorder as a result of her being fired.

Plaintiff's amended complaint alleges five causes of action. Count I, an ERISA fiduciary claim, derives from Dr. Bryant's cancellation of plaintiff's health insurance. Count II alleges a claim for wrongful discharge. Counts III and IV assert that defendant is liable, respectively, for negligent and intentional infliction of emotional distress. Count V (numbered incorrectly as a second count IV) alleges that defendant breached an implied covenant of good faith and fair dealing. Defendant has moved to dismiss counts II through V pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that they fail to state a claim upon which relief can be granted.

### II. PLAINTIFF'S STATE–LAW CLAIMS

#### A. Wrongful Discharge

Plaintiff asserts in count II that defendant wrongfully discharged her from employment in violation of Pennsylvania public policy. Plaintiff admits she was an at-will employee of Dr. Bryant's. The general rule in Pennsylvania is that an at-will employee may be dismissed with or without cause, for good reason, bad reason, or no reason. *Clark v. Modern Group, Ltd.*, 9 F.3d 321, 327 (3d Cir.1993). Some courts have recognized a narrow exception, "in only the most limited of circumstances," where discharge of an at-will employee would threaten clear mandates of public policy. *Paul v. Lankenau Hosp.*, 524 Pa. 90, 569 A.2d 346, 348 (1990) (citing *Clay v. Advanced Computer Applic.*, 522 Pa. 86, 559 A.2d 917, 918 (1989)). The cases in Pennsylvania where the public policy exception has been recognized all involve a constitutionally or legislatively established prohibition, requirement, or privilege; e.g., firing an employee who made a nuclear safety report required by law, not hiring someone whose criminal conviction had been pardoned, and firing an employee who was absent due to jury duty. *Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1343–44 (3d Cir.1990) (state cases, citations omitted), *cert. denied*, 499 U.S. 966, 111 S.Ct. 1597, 113 L.Ed.2d 660 (1991). In addition, terminated plaintiffs have been successful when fired for refusing to serve alcohol to an intoxicated patron, refusing to participate in lobbying, refusing to engage in antitrust violations, and refusing to take a polygraph test. *Id.* at 1344 (federal cases, citations omitted). In sum, the excep-

---

1. While the complaint says the assailant was plaintiff's ex-husband, plaintiff states in her response to defendant's motion that she was married to, but separated from, her assailant.

2. Presumably, defendant's concerns stemmed from the physical or emotional danger to other employees or patients if plaintiff's estranged husband came to the workplace and engaged in further violent behavior directed primarily at plaintiff.

tion is most frequently applied when the discharge results from an employee's compliance with or refusal to violate the law, or where the employee did something he or she was privileged to do. *Id.* As the Third Circuit has stated, the public policy exception does not exist to protect the employee. *Clark,* 9 F.3d at 331–32. Rather, it protects society from public harm or vindicates fundamental individual rights. *Id.*

■ Ms. Green argues that her dismissal violates dual public policies: protecting an employee's right to privacy and protecting victims of crime or spousal abuse.[3] In support of her first contention, plaintiff notes that the Third Circuit has recognized a strong policy favoring a right to privacy. *Borse v. Piece Goods Shop, Inc.,* 963 F.2d 611 (3d Cir.1992). There is little connection between *Borse* and this case. *Borse* involved an employee whose employment was terminated for refusing to submit to urinalysis screening and personal property searches conducted by her employer. *Id.* at 612. In this case, plaintiff states that she revealed to another employee, Dr. Brown, that she had been raped and severely beaten. There is no allegation that defendant initiated the conversation, required disclosure of the information, questioned plaintiff about her marital situation, inquired into personal or private details, or in any way sought to intrude upon plaintiff's privacy in a substantial and highly offensive manner. *See Borse,* 963 F.2d at 625. I find that defendant's discharge of plaintiff did not violate the public policy favoring a right to privacy.

■ Plaintiff also argues that her discharge is in violation of Pennsylvania's policy to protect victims of crime and domestic abuse, as embodied in the state's criminal code, Protection From Abuse Act, 23 Pa. C.S.A. § 6101 *et seq.,* and the establishment of the Crime Victim's Compensation Board, 71 P.S. § 180–7 *et seq.* The flaw in plaintiff's argument is that while these statutes provide certain procedures and protections, they do not thereby create a protected employment class. In the statutes to which plaintiff re-

fers, the legislature included certain programs or safety measures, but excluded others. For example, the Protection from Abuse Act specifies that a defendant may be directed to pay a plaintiff for economic losses incurred as a result of the abuse. 23 Pa. C.S.A. § 6108(a)(8). It does not, however, say that a complainant is entitled to any kind of employment rights or benefits. Similarly, a crime victim may be eligible for compensation pursuant to 71 P.S. § 180–7.3, but the statute does not create employment rights or privileges. It might be a different case, and a closer question as to the public policy exception, if plaintiff alleged that she was discharged because she had applied for victim compensation or had sought a protective order. That, however, is not her allegation. Plaintiff was not discharged because she refused to violate the law, because she complied with the law, or because she exercised a right or privilege granted by the law. Therefore, in the absence of any indication that Pennsylvania has established a clear mandate that crime victims generally, or spousal abuse victims specifically, are entitled to benefits or privileges beyond those enumerated in the laws, I must conclude that plaintiff's dismissal was not in violation of public policy. Because plaintiff has not alleged facts sufficient to state a claim that her discharge from at-will employment was in violation of public policy, defendant's motion to dismiss count II must be granted.

### B. Negligent Infliction of Emotional Distress

■ With regard to count III, defendant and plaintiff argue about whether plaintiff has sufficiently alleged physical harm. Plaintiff has alleged in her complaint that she suffered physical effects, specifically migraine headaches and post-traumatic stress disorder, as a result of the termination of her employment. The argument about whether the allegations of physical harm are adequate, however, begs the question of whether plaintiff has sufficiently alleged that defendant has engaged in negligent conduct. A

---

3. Plaintiff's complaint also mentions "protection of employment of crime victims and witnesses." She has not, however, alleged any facts indicat-

ing that she was fired for appearing as a witness or for participating in court proceedings against her assailant.

plaintiff alleging negligent infliction of emotional distress ("NIED"), in the absence of allegations that he or she witnessed an accident injuring a close relative, must allege that he or she "suffered such distress as a result of a breach by a defendant of a distinct pre-existing duty of care, that is in essence an independent tort." *Herbert v. Greyhound Lines, Inc.*, 1994 WL 493732, *3–4, 1994 U.S. Dist. LEXIS 12712 at *12 (E.D.Pa. Sept. 8, 1994). While allegations of physical injury are necessary to state a claim, they are not, by themselves, sufficient to do so. *Armstrong v. Paoli Mem. Hosp.*, 430 Pa.Super. 36, 633 A.2d 605, 609 (1993), *appeal denied*, 538 Pa. 663, 649 A.2d 666 (1994). As the Supreme Court of Pennsylvania has pointed out, the first point of inquiry is whether the defendant owed plaintiff a duty of care. *Mazzagatti v. Everingham*, 512 Pa. 266, 516 A.2d 672 (1986). One panel of the Superior Court of Pennsylvania implicitly found such a duty in an employee-employer context when it reversed a lower court's order sustaining preliminary objections to plaintiff's allegations of NIED. *See Crivellaro v. Pennsylvania Power & Light Co.*, 341 Pa.Super. 173, 491 A.2d 207, 208, 210 (1985) (court focused on whether plaintiff had sufficiently pleaded physical injury). I do not read *Crivellaro*, however, as establishing that an employer owes a duty to an employee not to discharge her. The emotional distress alleged in *Crivellaro* involved not the firing of an employee, but rather, an employer's corralling an employee into a 30–day residential treatment program at a psychiatric facility. *Id.*, 491 A.2d at 208. The employee sued both her employer and the facility, asserting that she had not received psychiatric counseling but instead "was subject to an intensive and abusive alcohol and drug detoxification program." *Id.*, 491 A.2d at 208–209. Ms. Green's situation is far removed from that of the plaintiff in *Crivellaro*, and I do not think that the higher courts of Pennsylvania would recognize a claim for NIED derived from an employer's discharging an employee. *See Armstrong*, 633 A.2d at 614 (other states have not recognized independent claim for NIED brought on by clumsy firing, notes that fired employees routinely bring suit for NIED). While *Crivellaro* suggests, and

*Armstrong* echoes, that there is a pre-existing duty between an employer and employee, the cases do not imply that simply terminating a worker's employment breaches that duty. *See Herbert*, 1994 WL 493732, *1, 3–4, 1994 U.S. Dist. LEXIS 12712 at *1, 12 (court dismisses NIED claim of employee who had been terminated by employer). Therefore, because plaintiff has not alleged that defendant breached any duty to her, and because I found above that defendant committed no wrong in discharging plaintiff, I find that Ms. Green has not sufficiently alleged a claim for NIED. Defendant's motion to dismiss count III must be granted.

## C. Intentional Infliction of Emotional Distress

■ In count IV, plaintiff asserts that defendant is liable for the intentional infliction of emotional distress ("IIED") because he discharged her, an abused spouse. Under Pennsylvania law, the conduct complained of in a claim for IIED must be extreme or clearly outrageous, a determination initially made by the court. *Hurst v. Beck*, 771 F.Supp. 118, 121 (E.D.Pa.1991). It is rare within the employment context that the conduct will reach a sufficient level of outrageousness. *Id.* I find that plaintiff's alleged circumstances of discharge do not rise to the level of outrageousness necessary to support a claim for IIED. Ms. Green asserts that because of her status as an abused spouse, Dr. Bryant's termination of her employment was extreme and outrageous. While I can contemplate circumstances where this might be the case, Ms. Green's complaint does not allege such a circumstance. Rather, she alleges only that she was fired because she was the victim of a violent crime. Although any involuntary discharge from employment is unpleasant, defendant's conduct was not so outrageous in character or extreme in degree as to exceed all bounds of decency. *See McMahon v. Impact Sys., Inc.*, 1992 WL 95920, *2, 1992 U.S. Dist. LEXIS 5835 at *5–7 (E.D.Pa. Apr. 5, 1992) (plaintiff's discharge from employment paled in comparison to hit and run driver burying victim's body without notifying authorities, defendant fabricating report that plaintiff had caused the death of

third person, or falsely telling the press that person had an incurable disease (citations omitted)). Because plaintiff has not alleged facts that would support a claim for IIED, defendant's motion to dismiss count IV must be granted.[4]

### D. Breach of Covenant of Good Faith and Fair Dealing

Finally, plaintiff alleges in count V that defendant has breached the implied covenant of good faith and fair dealing, arguing that "all employment contracts, including those construed to be at-will, contain an implied covenant of good faith." *EEOC v. Chestnut Hill Hosp.*, 874 F.Supp. 92 (E.D.Pa. 1995); *Somers v. Somers*, 418 Pa.Super. 131, 613 A.2d 1211, 1213 (1992). In this case, it is unnecessary to explore the boundaries of employer-employee good faith in the at-will context. It is sufficient to say that there is no bad faith when an employer discharges an at-will employee for good reason, bad reason, or no reason at all, as long as no statute or public policy is implicated. Defendant's motion to dismiss count V (numbered as a second count IV) must therefore be granted.

## III. CONCLUSION

Plaintiff's discharge from at-will employment was not in violation of public policy. Dr. Bryant breached no duty that would give rise to a claim for negligent infliction of emotional distress, and his conduct was not sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress. Finally, it was not bad faith for defendant to terminate plaintiff's employment. Defendant's motion to dismiss counts II, III, IV, and V of plaintiff's complaint must therefore be granted.

---

**4.** Defendant also argues that the exclusivity provision of the Pennsylvania Workers' Compensation Act bars recovery on plaintiff's claims of negligent and intentional infliction of emotional distress. Because I have found for other reasons that plaintiff has failed to state a claim on those counts, I make no finding as to whether the statute would bar recovery.