**Lynne A. REGAN, Plaintiff,**

v.

**TOWNSHIP OF LOWER MERION, Joseph Daly, Individually and as Superintendent in the Lower Merion Township Police Department, and Michael McGrath, Individually and as Lieutenant in the Lower Merion Township Police Department, Defendants.**

No. CIV. A. 98–2945.

United States District Court,
E.D. Pennsylvania.

Feb. 12, 1999.

Jill Fisher, Silverman, Coopersmith, Hillman & Frimmer, Philadelphia, PA, for Plaintiff.

J. Freedley Hunsicker, Jr., Thomas Martin, Philadelphia, PA, for Defendant.

### MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Presently before the Court is the motion of defendants Township of Lower Merion, Joseph Daly, individually and as Superintendent of the Lower Merion Township Police Force, and Michael McGrath, individually and as Lieutenant in the Lower Merion Township Police Force for partial dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Document No. 6). The complaint alleges violations of Title VII of the Civil Rights Act of 1961, 42 U.S.C. § 2000e et seq. ("Title VII") (Counts I and II), the denial of constitutional rights and equal protection under the law in violation of 42 U.S.C. § 1983 ("Section 1983") (Counts III and IV), as well as common law tort claims of intentional and negligent infliction of emotional distress (Counts V and VI).[1] Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and the Court has supplemental jurisdiction over the State and common law claims pursuant to 28 U.S.C. § 1367. Based on the following analysis, the motion will be granted in part and denied in part.

### I. Background

Plaintiff Lynne A. Regan was employed by the Township of Lower Merion Police Department as a dispatcher beginning July 12, 1993. Throughout her employment Regan alleges that the Township, through its employees, continually engaged in unwelcome behavior consisting of sexually offensive comments, inappropriate touching in a sexually suggestive manner and unwanted gifts of a sexual nature. (Complaint at ¶ 10). Specifically, Regan alleges that her supervisors—Sgt. Albany (now Capt. Albany), Sgt. Redifer, Sgt. Arrell Sgt. Higgins and Officer Ryan—watched pornographic movies in the radio room during Regan's shift, forcing her to watch them as well. (Id. at ¶ 11). Regan's request that the movies be turn off was refused. On one occasion, in response to her request that the sex movie be turned off, Sgt. Redifer grabbed his crotch. (Id. at ¶ 12).

Regan was also forced to watch male prisoners being strip searched on closed circuit T.V. in the radio room during her shift while having her supervisors make lewd comments such as "Isn't he a hairy one?" (Id. at ¶ 11). Regan was further harassed by Sgt. Albany who told her to wear more dresses or skirts so that he would have easier access to her. He also told Regan that her breasts were not big enough. (Id. at ¶ 13).

In retaliation for asking Sgt. Albany to cease his harassing conduct, Sgt. Albany reported Regan to Lieut. McGrath for insubordination. (Id. at ¶ 15). After explaining that she was curt with Sgt. Albany because she was tired of all the sexual comments, Lieut. McGrath told her he would not reprimand her but not to speak to anyone about the matter. Subsequently, Regan was unable to switch shifts with other co-workers despite other dispatchers being permitted to do so. Sgt. Albany was transferred in September of 1995. (Id. at ¶¶ 15, 16).

---

1. It is undisputed that the law of Pennsylvania applies to the common law tort claims.

In further retaliation for reporting these various incidents of sexual harassment, Regan was issued written warnings for being late a number of times in or around September of 1995. (*Id.* at ¶ 18). When she attempted to grieve the warnings, her immediate supervisor, Officer Fitzpatrick told her he didn't care because he was leaving the department. A few weeks later, Officer Fitzpatrick's replacement, Officer Ray Gough, told Regan that she could not grieve the disciplinary action because she took too long to file a formal complaint. Also in September, Lieut. McGrath began calling Regan into his office at the end of her shift to tell her she was a terrible person and not liked by her co-workers. (*Id.* at ¶ 19).

In or around February, 1995, Sgt. Acello began to sit very close to Regan during work hours, touching her hair and rubbing her shoulders. He ignored Regan's request that he stop his inappropriate touching. In March of 1995, Sgt. Acello gave Regan a black "teddy" negligee. Regan told him the gift was unwanted and unwelcome. Sgt. Acello told her to keep it anyway. (*Id.* at ¶ 17).

In or around January of 1996, Regan was again written up for lateness and was suspended for two days in February, 1996. (*Id.* at ¶ 21). In March of 1996, Sgt. Hertzog disciplined Regan for accepting a personal call during her shift. Other employees who accepted personal calls were not reprimanded. Regan was again suspended for three days in the beginning of April, 1996. (*Id.* at ¶ 22).

Subsequently, Regan met with Roseanne Siso, personnel director for the Township, regarding her suspension. (*Id.* at ¶ 23). During the meeting, Regan complained about the harassment to which she had been subjected. Soon thereafter, McGrath began to tell Regan that she was going to be terminated. In or around May, 1996, Regan was advised by Siso that the Township's lawyer had conducted an investigation into her complaints, but that they could not be substantiated. (*Id.* at ¶ 24). Siso then informed Regan that she may need union representation at a meeting which would include Sgt. Herzog and Lieut. McGrath. (*Id.* at ¶ 25).

Two union representatives were at the June meeting (although Herzog and McGrath were not there) and Regan was informed for the first time of various personal calls she was alleged to have made, complaints allegedly lodged by various unnamed staff members and reprimands she allegedly received. As a result, Regan was put on administrative leave. (*Id.*).

On June 11, 1996, Regan was summoned to a meeting with Siso. At the meeting, Superintendent Daly told her that she was being fired for allegedly missing 911 calls, accepting personal calls, lateness and other alleged wrongdoings. Regan maintains that she never missed a 911 call. (*Id.* at ¶ 26).

Approximately one week after Regan was terminated, Siso asked to meet with her again. At the meeting, Siso presented Regan with a release form for all her claims. Siso told Regan that if she did not sign the release she would be given a bad recommendation, all her benefits would be canceled and her unemployment claim would be contested. Siso also threatened Regan with a fine of $5,000.00 for each person Regan told about the contents of the release. (*Id.* at ¶ 27).

Subsequently, Regan filed this action alleging violations of Title VII and Section 1983 as well as common law torts. Count I is a claim for Title VII liability against the Township. Count II is a claim for retaliation under Title VII against the Township. Count III is a claim of liability under Section 1983 against all defendants (the Township as well as Daly and McGrath individually and in their official capacity). Count IV is a claim for retaliation under Section 1983 against all defendants. Count V is a claim for intentional infliction of emotional distress against all defendants. Count VI is a claim for negligent infliction of emotional distress against all defendants.

## II. Legal Standard

Rule 12(b) of the Federal Rules of Civil Procedure provides that "the following defenses may at the option of the pleader be made by motion: (6) failure to state a claim upon which relief can be granted." In deciding a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded facts in the

complaint as true and view them in the light most favorable to the plaintiff. *See Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). A motion to dismiss should only be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (section 1983 claims are to be evaluated in accordance with the liberal standard enunciated in Rule 8(a)).

## III. Discussion

Defendants have moved to dismiss: (1) Counts III and IV (the Section 1983 claims) against the individual defendants in their official capacities; (2) Count IV (retaliation under Section 1983) for failure to state a claim; (3) Count V (intentional infliction of emotional distress) for failure to state a claim and as barred by the Pennsylvania's Political Subdivision Tort Claims Act ("Tort Claims Act") as against the Township and the individual defendants in their official capacities; (4) Count VI (negligent infliction of emotional distress) for failure to state a claim and as barred by the Tort Claims Act; and (5) the claim for punitive damages under Section 1983 and Title VII.

For purposes of this motion, Regan concedes that the following claims are subject to dismissal: (1) Count III and IV against the individual defendants in their official capacity; (2) Count V and VI against the Township and the individual defendants in their official capacity; and (3) the claim for punitive damages against the Township in Counts I–IV. The remaining claims will be discussed in order.

### A. Retaliation Under Section 1983

Regan concedes that her Section 1983 claim for retaliation against the individual defendants in their official capacity is subject to dismissal. Accordingly, those claims will be dismissed and I will consider her claim for retaliation against the Township and McGrath and Daly in their individual capaci-

ties. Defendants argue first that there is no cognizable claim for retaliation under Section 1983 and, therefore, the Count IV should be dismissed for failure to state a claim. Defendants also argue that Regan's claim for retaliation under Section 1983 is subsumed by her claim under Title VII. Regan simply asserts that a claim for retaliation under Section 1983 exists.

It has oft been recited that Section 1983 does not create any substantive rights, but rather is remedial in nature, providing a method for vindicating federal rights elsewhere conferred. *See, e.g., Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Sameric Corp. of Del., Inc. v. City of Philadelphia,* 142 F.3d 582, 590 (3d Cir.1998). Care must be exercised when analyzing claims both under Section 1983 and a comprehensive statutory scheme which creates substantive rights and provides its own, exclusive remedial scheme. *See Middlesex County Sewerage Authority v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Great American Federal S & L Ass'n v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) (depravation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)); *McLaughlin v. Rose Tree Media Sch. Dist.,* 1 F.Supp.2d 476, 479–80 (E.D.Pa.1998). In *Sea Clammers,* the Supreme Court held that when a federal statute has its own comprehensive enforcement and remedial scheme, that scheme is the exclusive remedy for violations of the statue. 453 U.S. at 20, 101 S.Ct. 2615. Thus, plaintiffs may not vindicate rights created under Title VII under Section 1983. *See McLaughlin,* 1 F.Supp.2d at 480; *see also, Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199, 1204 (6th Cir.1984).

A plaintiff may, however, pursue a remedy under Section 1983 as well as under Title VII when the defendant's conduct violates both Title VII and a separate constitutional right. *McLaughlin,* 1 F.Supp.2d at 479–80; *see also Andrews v. City of Philadelphia,* 895 F.2d 1469 (3d Cir.1990). Thus, even if a plaintiff brings a claim under Title VII for retaliation, he or she may have a viable claim under Section 1983 for retaliato-

ry discharge based upon the exercise of his or her First Amendment rights. *Anderson v. Davila,* 125 F.3d 148, 160 (3d Cir.1997) ("The Supreme Court has explicitly held that an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights.") (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Azzaro v. County of Allegheny,* 110 F.3d 968, 975 (3d Cir. 1997) (en banc)). In her complaint, Regan alleges that the defendants retaliated against her because she "complained" about being sexually harassed. (Complaint at ¶ 40). Consequently, it is possible to infer that the complaint contains an allegation that the defendants retaliated against Regan based upon her exercise of her rights under the First Amendment.

■ Employees may bring a claim under Section 1983 to enforce the protection provided by the First Amendment against retaliation if: (1) they spoke on a matter of public concern; (2) their interest in that field outweighs the government's concern with the effective and efficient fulfillment of its responsibilities to the public; (3) the speech caused the retaliation; and (4) the adverse employment decision would not have occurred but for the speech. *Fogarty v. Boles,* 121 F.3d 886, 888 (3d Cir.1997); *see also Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

■ The Supreme Court has indicated that a public employee's speech is protected when it relates "to any matter of political, social, or other concern to the community." *Connick,* 461 U.S. at 146, 103 S.Ct. 1684. In a recent en banc decision, the Court of Ap-

peals for the Third Circuit set forth the analysis courts should use to determine if a matter is of public concern. *Azzaro,* 110 F.3d at 975–80. (First Amendment protected employee from retaliation where plaintiff reported a single incident of sexual harassment by an assistant to the County Commissioner). Looking at all the surrounding circumstances including the context and form of the speech, courts must ask "whether expression of the kind at issue is of value to the process of self governance." *Id.* 110 F.3d at 977. In its public concern analysis, the Court of Appeals also addressed the relevance of the speaker's motive, stating that "the speaker's motive, while often a relevant part of the context of the speech, is not dispositive in determining whether a particular statement relates to a matter of public concern." *Id.* at 978. The court also rejected the idea that a grievance about sexual harassment is only a matter of public concern if it includes indications that there is a systemic problem interfering with the public agency's performance of its governmental functions, and not if the complaints relate solely to the employee's own situation. *Id.* at 980.

Under the liberal rules of notice pleading, Regan's allegations are sufficient state a prima facie case for retaliatory discharge in violation of her First Amendment rights. (Complaint at ¶¶ 31, 33, 37, 39, 42, 44, 46). It is, therefore, inappropriate at this juncture to dismiss Count IV for failure to state a claim.

**B. Intentional Infliction of Emotional Distress** [2]

Regan concedes that her claim for intentional infliction of emotional distress against

---

**2.** Although the parties do not raise it in their briefs, I note that the Supreme Court has never expressly recognized an action for intentional infliction of emotional distress. In *Kazatsky,* the Pennsylvania Supreme Court analyzed a claim for intentional infliction of emotional distress and dismissed it without explicitly recognizing the viability of the tort in Pennsylvania. *Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 527 A.2d 988, 991 (1987). Most recently, in *Hoy,* the Pennsylvania Supreme Court upheld the lower court's dismissal of a claim for intentional infliction of emotional distress because the defendants conduct was not sufficiently outrageous.

*Hoy v. Angelone,* 720 A.2d 745, 755 (Pa.1998). Nevertheless, the Court left "to another day the issue of whether section 46 of the Restatement should be the law of Pennsylvania." *Id.* at 754 n. 10. Nevertheless, there is a long list of federal court decisions in the Third Circuit holding that the tort does exist under Pennsylvania law. *See, e.g., Andrews,* 895 F.2d at 1487; *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988); *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1274 (3d Cir.1979); *Williams v. Guzzardi,* 875 F.2d 46 (3d Cir.1989); *Rodgers v. Prudential Ins. Co. of America,* 803 F.Supp. 1024,

the Township and the individual defendants in their official capacity is subject to dismissal. Accordingly, I will consider her claim for intentional infliction of emotional distress against McGrath and Daly in their individual capacities.

■ To state a claim for intentional infliction of emotional distress, a plaintiff must plead that the defendant's conduct: (1) was intentional or reckless; (2) was extreme and outrageous; (3) actually caused the distress; and (4) caused distress that was severe. *Cox*, 861 F.2d at 395; *Mulgrew v. Sears Roebuck & Co.*, 868 F.Supp. 98, 103 (E.D.Pa. 1994); *Hoy*, 720 A.2d at 753; *Kazatsky*, 527 A.2d at 991. In order to state a cognizable claim, the conduct must be "so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society." *Mulgrew*, 868 F.Supp. at 103.

■ As the Supreme Court of Pennsylvania recently reiterated, " 'it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.' " *Hoy*, 720 A.2d at 754 (quoting *Cox v. Keystone Carbon*, 861 F.2d 390, 395 (3d Cir.1988)). In the employment context, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action. *Id.* "The only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee." *Id.* at (quoting *Andrews*, 895 F.2d at 1487); *see also Solomon v. City of Philadelphia*, 1996 WL 20651, at *3–4 (E.D.Pa. Jan.16, 1996) (retaliatory conduct not limited to turning down direct sexual propositions).

■ Regan has alleged a pattern of sexual harassment and has alleged that Lieut. McGrath and Superintendent Daly retaliated against her for complaining about sexual harassment. Thus, Regan has sufficiently

pled a cause of action of intentional infliction of emotional distress to withstand a 12(b)(6) motion. *McLaughlin v. Rose Tree Media Sch. Dist.*, 1 F.Supp.2d 476, 483 (E.D.Pa. 1998) (female janitor stated a cause of action against assistant principal who retaliated against her for complaining that her supervisor subjected her to continuing sexual harassment).

### C. Negligent Infliction of Emotional Distress

Regan concedes that her claim for negligent infliction of emotional distress is subject to dismissal as to the Township and the individual defendants in their official capacities. Accordingly, those claims will be dismissed. I turn now to the claims against Superintendent Daly and Lieut. McGrath in their individual capacities.

■ The negligent infliction of emotional distress is a cognizable tort in Pennsylvania. *See Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979); *Neiderman v. Brodsky*, 436 A.2d 84 (Pa.1970); *Green v. Bryant*, 887 F.Supp. 798, 801–02 (E.D.Pa.1995). However, there is confusion regarding the bases upon which relief can be sought. *Brown v. Philadelphia College of Osteopathic Medicine*, 449 Pa.Super. 667, 674 A.2d 1130, 1135 (1996). The tort has evolved largely in the context of those who observe injury to close family members and are distressed as a consequence of the shock. *Armstrong v. Paoli Memorial Hosp.*, 430 Pa.Super. 36, 633 A.2d 605, 609 (1992), *allocatur denied*, 538 Pa. 663, 649 A.2d 666 (1994). Courts have routinely required that a physical injury must be averred to sustain a cause of action for negligent infliction of emotional distress. *Id.*; *Hunger v. Grand Central Sanitation*, 447 Pa.Super. 575, 670 A.2d 173, 178 (1995). In *Hunger*, the Superior Court stated that:

> [a] cause of action for negligent infliction of emotional distress exists in only two circumstances: 1) where a close family member experiences a contemporaneous sensory observance of physical injuries being inflicted on another family member or

1031 (M.D.Pa.1992), *aff'd*, 998 F.2d 1004 (3d Cir.1993); *Bowersox v. P.H. Glatfelter Co.*, 677 F.Supp. 307, 311 (E.D.Pa.1988). I will follow

these decisions and assume that under Pennsylvania law intentional infliction of emotional distress is actionable.

2) where the plaintiff nearly experiences a physical impact in that he was in the zone of danger of the defendant's tortious conduct.

*Id.* at 178 (internal citations omitted). Nevertheless, other courts have held that in the absence of physical impact, a plaintiff can recover for negligent infliction of emotional distress, not only if he or she witnessed an accident in which a close relative was injured, but also if he or she suffered "distress as a result of a breach by a defendant of a distinct pre-existing duty of care, that is in essence an independent tort." *Herbert v. Greyhound Lines, Inc.,* 1994 WL 493732 at *4 (E.D.Pa. Sept.8, 1994); *see also Green v. Bryant,* 887 F.Supp. at 802; *Hunger,* 670 A.2d at 174–75 (Beck, J., concurring) (agreeing that plaintiff did not state a claim for negligent infliction of emotional distress but recognizing that tort of negligent infliction of emotional distress can be based upon a violation of a pre-existing duty grounded in a contractual or implied contractual relationship); *Armstrong,* 633 A.2d at 615 ("Pennsylvania also recognizes recovery in situations in which there is a contractual or fiduciary duty."); *Crivellaro v. Pennsylvania Power & Light Co.,* 341 Pa.Super. 173, 491 A.2d 207, 208 (1985) (implicitly finding tort of negligent infliction of emotional distress can be grounded in a duty of care arising in an employee-employer context in reversing trial court's order sustaining preliminary objections to a plaintiff's allegations of negligent infliction of emotional distress).

The crux of Regan's claim against Lieut. McGrath and Superintendent Daly is that they were responsible for improperly terminating her employment. Terminating a worker's employment, however, does not constitute a breach of duty. *See Green,* 887 F.Supp. at 802; *Hunger,* 670 A.2d at 175 (Beck, J., concurring). Thus, Regan has not alleged that the defendants breached any duty owed to her. Accordingly, I find that she has not sufficiently alleged a claim for the negligent infliction of emotional distress. *Green,* 887 F.Supp. at 802 (firing employee because she was victim of violent crime did not breach pre-existing duty); *Herbert v. Greyhound Lines, Inc.,* 1994 WL 493732, at *4 (E.D.Pa. Sept.8, 1994) (firing employee who alleged she was terminated because of her sex, race and age did not breach pre-existing duty). Defendant's motion to dismiss Count VI will therefore be granted.

### D. Punitive Damages

Regan concedes that her request for punitive damages in Counts I, II, III and IV are subject to dismissal. Accordingly, the request for punitive damages in Counts I–IV will be stricken.

### IV. Conclusion

Based upon the foregoing memorandum, the motion will be granted in part and denied in part. An appropriate Order follows.

### *ORDER*

**AND NOW** this 12th day of February, 1999, upon consideration of the partial motion to dismiss of defendants Township of Lower Merion, Joseph Daly, individually and as Superintendent of the Lower Merion Township Police Force, and Michael McGrath, individually and as Lieutenant in the Lower Merion Township Police Force (Document No. 6) and the response of plaintiff Lynne A. Regan thereto, and for the reasons set forth in the foregoing memorandum, it is hereby **ORDERED** that the motion is **GRANTED** in that Counts III and IV as to the individual defendants in their official capacities, Count V as to the Township and the individual defendants in their official capacities, Count VI as to all defendants, the request of plaintiff for punitive damages in Counts I–IV are **DISMISSED** and otherwise the motion is **DENIED.**

**IT IS FURTHER ORDERED** that defendants are to answer the complaint by **Monday, March 8, 1999.**