**Julia McDANIEL and Lois Cavallucci, Plaintiffs,**

v.

**AMERICAN RED CROSS, JOHNSTOWN REGION, Defendant.**

No. 99–9J.

United States District Court, W.D. Pennsylvania.

July 29, 1999.

Daniel W. Rullo, Barbera, Clapper, Beener, Ruller & Melvin, Somerset, PA, for Plaintiffs,

Joseph Mack, III, Thorp, Reed & Armstrong, Pittsburgh, PA, for Defendant.

## MEMORANDUM OPINION AND ORDER

### D. BROOKS SMITH, District Judge.

This is a state law wrongful discharge case in which plaintiffs, two former supervisors for the American Red Cross in Johnstown, Pennsylvania, contend that their employer unfairly and unlawfully terminated them because they chose to keep the confidence of their subordinates when those subordinates stated they had been subjected to improper sexual behavior by male employees. Defendant, for its part, has filed a motion to dismiss under Fed. R.Civ.P. 12(b)(6), asserting that it fired both plaintiffs because they willfully disregarded its policy that all incidents of alleged sexual harassment must be formally reported to Red Cross management. Because I conclude that plaintiffs' dismissal does not fit within the very narrow public policy exception to the employment-at-will doctrine recognized in Pennsylvania, I will grant the motion and dismiss the complaint with prejudice.

### I.

Viewed in the light most favorable to plaintiffs and giving them every available inference from the facts as pleaded, it appears that both plaintiffs were 58–year–old supervisors[1] for the Johnstown Red Cross, when, in 1997, they both overheard subordinates discussing incidents that could potentially be construed as sexual harassment. Both employees stated that they had been asked out on a date or otherwise propositioned by a married, male co-worker. When plaintiffs inquired further, both subordinates asked that the matter be kept confidential and not dealt with officially because the subordinates wished to handle the matters themselves. Plaintiffs complied with this request because neither supervisor believed that the male employees' conduct was serious enough to constitute harassment. Their decision to keep these confidences, however, contravened Red Cross policy that all incidents of sexual harassment must be reported.

Several months later, one of the employees related the details of her incident to plaintiff Cavallucci in greater detail, prompting Cavallucci this time to refer the matter to the Collections Director as a serious incident of sexual harassment. After the incident was reported, both plaintiffs were dismissed for violating Red Cross policy in having failed to report an incident of sexual harassment; neither has since found comparable work.

Plaintiffs then filed suit in the Court of Common Pleas of Cambria County, alleging only wrongful discharge under state common law. Defendant, which is a federally chartered corporation, timely removed the action to this court under 36 U.S.C. § 300105(a)(5) (formerly 36 U.S.C. § 2), which provides original jurisdiction in federal district court over any action in which the Red Cross is a party. *See American Nat'l Red Cross v. S.G.*, 505 U.S. 247, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992). The matter is now fully briefed and ripe for adjudication.

### II.

A motion to dismiss cannot be granted unless the allegations in the complaint taken as true fail to state any claim upon which relief can be granted. *Angelastro v. Prudential–Bache Securities, Inc.*, 764 F.2d 939, 944 (3d Cir.1985) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In ruling upon a motion to dismiss, a district court must accept as true all facts alleged in the complaint, and view them in the light most favorable to the plaintiff. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). A court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'"

1. Julia McDaniel and Lois Cavallucci had been supervisors for nine and fourteen years, respectively, at the time of the incident that gave rise to this litigation. Their salaries were both in the mid–$30,000 range.

*In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir.1996)).

## III.

██ It is, of course, axiomatic under Pennsylvania law that all employment is presumed to be at will, as a consequence of which an employee may be discharged "with or without cause, at pleasure, unless restrained by some contract." [2] *Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231, 1233 (1998); *Luteran v. Loral Fairchild Corp.*, 455 Pa.Super. 364, 688 A.2d 211, 214 (1997), *alloc. denied*, 549 Pa. 717, 701 A.2d 578 (1997); *see Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 896 n. 2 (3d Cir.1983) (quoting *Payne v. Western & Atl. R.R. Co.*, 81 Tenn. 507, 518–19 (1884) (employee may be discharged for good cause, bad cause or no cause at all), *overruled on other grounds, Hutton v. Watters*, 132 Tenn. 527, 179 S.W. 134, 138 (1915)). "An exception to this rule has been recognized in the most limited of circumstances, where the discharge of an at-will employee would threaten clear mandates of public policy." *Kroen v. Bedway Security Agency, Inc.*, 430 Pa.Super. 83, 633 A.2d 628, 632 (1993); *accord Neal v. Altoona Hosp.*, 38 Pa. D. & C.3d 599, 602–03, 1985 WL 5667 (1985) (Smith, J.). This tort of wrongful discharge, *see Woodson v. AMF Leisureland Ctrs., Inc.*, 842 F.2d 699, 701 (3d Cir.

1988),[3] can be established only when "the employee ... point[s] to a clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision." *Hunger v. Grand Cent. Sanitation*, 447 Pa.Super. 575, 670 A.2d 173, 175 (1996). That policy, moreover, "must be applicable directly to the employee and the employee's actions. It is not sufficient that the employer's actions toward the employee are unfair." *Id.* at 175–76.[4]

Thus, the courts applying Pennsylvania law have allowed suits for wrongful termination on public policy grounds only when the dismissal was based itself on an unlawful ground or otherwise subverted the law as recognized in this Commonwealth, for example by punishing plaintiff for exercising rights or fulfilling duties granted or imposed by statute. *See Woodson*, 842 F.2d at 702 (plaintiff fired for refusing to unlawfully serve alcohol to intoxicated customer); *Shick*, 716 A.2d at 1231 (plaintiff discharged for filing workers' compensation claim); *Highhouse v. Avery Transp.*, 443 Pa.Super. 120, 660 A.2d 1374, 1378 (1995) (plaintiff dismissed for filing unemployment compensation claim); *Kroen v. Bedway Security Agency*, 430 Pa.Super. 83, 633 A.2d 628, 633 (1993) (plaintiff terminated for refusing to take polygraph test, when employer's use of such test was forbidden by statute); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386

---

**2.** Discrimination in violation of a federal, state or local statute is an independent legal wrong for which redress may be obtained, but is neither a breach of employment contract nor a common law tort. The parties to an employment relationship, of course, may agree to something other than at-will employment, either in an individual or collective bargaining agreement. None of these situations is present in the case *sub judice.*

**3.** *Accord Neal*, 38 Pa. D. & C.3d at 600 (Smith, J.) (claim for wrongful discharge sounds in trespass).

**4.** In *Neal*, I reasoned that

the common ground of all the public policy exceptions is that the public interest in protecting certain conduct by the employee or

restraining certain conduct by the employer is impaired by wrongful discharge, not because the private employment relationship is itself a protected interest of the employee. Therefore, an employer may discharge an employee for good reason, no reason, or bad reason so long as he does not infringe on some protected area of the employee's life which he is not free to enter.

*Id.* at 606–07 (citing *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174, 180 (1974)). Of course, if the employer's conduct resulting in the employee's dismissal is intentional and sufficiently outrageous, it may be independently actionable as intentional infliction of emotional distress. *See Subbe–Hirt v. Baccigalupi*, 94 F.3d 111 (3d Cir.1996) (management conduct sufficiently outrageous to constitute intentional infliction under New Jersey law).

A.2d 119, 120 (1978) (plaintiff dismissed for complying with jury duty obligation); see generally Neal, 38 Pa. D. & C.3d at 602, 604 (reviewing grounds for exception). Instantly, while plaintiffs may have reasonably felt a moral or social duty to do so, there was no *legal* right or obligation for plaintiffs to keep the confidences of their subordinates; thus, these cases are inapposite.

At least one court, however, has held that an employee's right under the First Amendment to express, or refrain from expressing, a political opinion will establish the public policy exception to the at-will rule. In *Novosel*, plaintiff was terminated when he refused to participate in his employer's lobbying campaign to repeal Pennsylvania's no-fault insurance law and privately expressed opposition to the employer's political position on that legislation. 721 F.2d at 896. The court, in upholding plaintiff's wrongful discharge claim, opined "that an important public policy is ... implicated whenever the power to hire and fire is used to dictate the terms of employee political activities." *Id.* at 900. *Novosel*, it should be noted, has not been given an expansive interpretation in the sixteen years after it was decided, *see Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 620 (3d Cir.1992); *Lee v. Wojnaroski*, 751 F.Supp. 58, 62 (W.D.Pa.1990) (Smith, J.).

It might be argued from *Novosel* that an employee has the right either to speak or to refrain from speaking, and that a court should consider defendant's punishing plaintiffs for keeping the confidences of their subordinates as an actionable breach of that right, in violation of public policy. While such an argument might have some surface appeal, it cannot be successfully maintained.

In *Novosel*, although the employer was not a state actor against which the employee could assert any direct First Amendment rights, the employee in that case chose not to parrot his employer's position on an issue of public concern by simply not speaking out as the employer had requested. The court was able to find a breach of public policy based on the employee's constitutional interest in speaking out—or in that case, not speaking out—as a citizen. Here, in contrast, plaintiffs chose not to speak about a purely internal, workplace matter, and in direct contravention of Red Cross policy. Such "speech" is simply not an interest that the public policy exception to the at-will rule can protect. *Cf. Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). In *Connick*, which involved speech of a government employee, mostly on internal matters not of public concern, the Supreme Court opined:

> When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, [employers] should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the ... employer's dismissal of the worker may not be fair, but ordinary dismissals ... which violate no fixed tenure or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable.

*Id.* That which applies in government employment by direct application of the First Amendment should apply no less in non-governmental employment at will when the First Amendment is applied as a public policy exception. Accordingly, *Novosel* and the constitutional public policy it recognizes cannot support plaintiffs' claims.[5]

■ Plaintiffs argue that permitting an employer to discharge an employee under

---

**5.** A later Third Circuit case interpreting *Connick* found that an employee's reporting of an incident of sexual harassment was on a matter of public concern. *Azarro v. County of Allegheny*, 110 F.3d 968 (3d Cir.1997) (en banc). But there, the alleged harasser was an assistant to an elected county commissioner, leading the court to conclude, *inter alia*, that the report would be relevant to the process of self-government, given that the electorate would have a legitimate interest in knowing

these circumstances would "undermine[ ] the goals and policies of Title VII and the Pennsylvania Human Relations Act[.]" Dkt. no. 6, at 8. Specifically, they assert that "[f]rivolous sexual harassment claims would skyrocket ... [and true] victims of sexual harassment will be discouraged from coming forward at all" if employees can be required to report information given them in confidence about conduct that may not even meet the legal tests for harassment. *Id.* at 9. Whatever the applicability of Gresham's Law [6] to the problem of sexual harassment, this policy argument is untenable, for two reasons.

First, there is no basis for the contention that frivolous claims would skyrocket if company policies like the one at issue here can be enforced on penalty of dismissal. We can surmise, rather, that competent management, often advised by skilled personnel administrators and legal counsel, will be well able to separate credible accounts of misconduct sufficiently severe that they amount to harassment from the garden-variety social friction and fiction of the workplace. Moreover, when employees know that any account that sounds even colorably like sexual harassment will be reported to management, they are likely to be more, not less, circumspect about idle and frivolous workplace chatter. Nor is it readily apparent that a victim of true sexual harassment will be made reluctant to come forward by such a policy. Such a victim typically reports an incident of harassment because she wants and needs to have an unpleasant and improper situation corrected quickly and effectively, and it takes management to do that. Indeed, had plaintiffs here

followed Red Cross policy, a case of sexual harassment could have been dealt with months sooner than it was otherwise. On purely factual grounds, then, plaintiffs' argument is questionable at best.

Second, although on this record there is little doubt that plaintiffs' actions in this case were well-intentioned, the law does not require an employer to trust its employees' discretion and judgment about whether an incident amounts to sexual harassment or should be formally reported. Employers can be held vicariously liable under Title VII for the misconduct of their employees, exposing them to large jury awards of compensatory and punitive damages, as well as equitable remedies. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662, 671 (1998). "With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action." 29 C.F.R. § 1604.11 (1999). To avoid that liability and foster a fairer workplace, employers adopt policies for the reporting and resolution of sexual harassment charges. *Faragher,* 118 S.Ct. 2275, 141 L.Ed.2d at 688–89. But an employer cannot take remedial actions for harassment of which it is in fact unaware, even though the law can impute liability based only upon what it reasonably *should* have known. It is therefore manifest that no employer can afford to simply trust its employees to decide which incidents to report and which not to.[7]

---

about such wrongdoing when evaluating the commissioner's performance. The Red Cross, despite its federal charter, is not an organ of government; hence, *Azarro* is inapposite.

**6.** "[T]he principle that bad money will drive good money out of circulation." *Webster's New World Dictionary* 593 (3d coll. ed.1988).

**7.** Relying upon *Torres v. Pisano,* 116 F.3d 625 (2d Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct.

563, 139 L.Ed.2d 404 (U.S.1997), plaintiffs argue that "an employer is not liable for sexual harassment where the employee requests that non-severe harassment be kept confidential and that no action be taken." Dkt. no. 6, at 10. *Torres,* which is not binding in this circuit, actually holds that this issue can only be decided on a case-by-case basis. *Id.* at 639; *see Wixted v. DHL Airways, Inc.,* No. 95 C 2296, 1998 WL 164922, *10 (N.D.Ill. Apr. 7, 1998) (declining to apply *Torres* ). That is small comfort indeed to an employer hoping

Plaintiffs next argue that Red Cross' policy essentially requires co-workers to commit the tort of slander by reporting all allegations of sexual harassment, whether well-founded or not. This employer-mandated breach of legal duty, they assert, is contrary to public policy and warrants an exception to the at-will rule. Once again, I am constrained to disagree.

There is authority, of course, that firing an employee for failing to commit a *criminal* act is sufficient to make out a public policy exception to the at-will rule. *See, e.g., Woodson,* 842 F.2d at 702. From that case, and without further citation of relevant authority,[8] plaintiffs contend that dismissing an employee who refuses to commit a tort should be an exception as well. Whether plaintiffs are correct in their assertion or not is a matter I need not decide, however, because, even if an employer is barred from discharging an employee under such circumstances, defendant's reporting policy does not place its employees in the position of tortfeasors.

■■■ Under Pennsylvania law, workplace communications related to employee discipline are conditionally privileged from liability for defamation. *Miketic v. Baron,* 450 Pa.Super. 91, 675 A.2d 324, 329–330 (1996). The privilege is vitiated only by abuse, that is, when "actuated by malice or negligence, . . . made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the privilege, or [when the publication] includes defamatory matter not reasonably believed to be necessary for the accomplishment of the privilege." *Id.* at 329. In

this case, employees are required only to report all incidents of alleged sexual harassment to Red Cross management. Provided that those reports are made factually, accurately and in good faith, there would appear to be little prospect of an employee being later held liable for defamation. Accordingly, there is no basis for a public policy exception based on preventing the commission of the tort of defamation.

Plaintiffs' next argument is that defendant's reporting policy amounts to an invasion of privacy of the plaintiffs, and of their co-workers and subordinates. Thus, they assert, firing plaintiffs for failing to comply with it violates public policy. This is especially true, they contend, because the female employees who were allegedly harassed never even contacted plaintiffs in their role as supervisors, but merely made comments that plaintiffs overheard. Although it cannot be denied that defendant's policy does require some things to be divulged that employees would rather be kept private, plaintiff's argument still must fail.

In *Borse,* the Third Circuit recognized invasion of privacy as a possible public policy exception to the at-will rule. But there, the privacy interest violated was that of urinating in private, which was potentially breached by the employer's substance abuse testing protocol. In contrast to the intimate privacy interest at issue in *Borse,* defendant's policy of reporting all workplace sexual harassment does not implicate any interest nearly so sacrosanct. The workplace is, by defini-

not only to keep its conduct within the bounds of the law, but to avoid expensive and protracted litigation as well.

8. Plaintiffs' reliance on *Borse,* 963 F.2d at 625, is unavailing. While that court did look to Pennsylvania's common law of invasion of privacy to find a public policy exception, *Borse* involved an employee who was discharged for refusing to consent to substance abuse testing which was arguably tortious on the part of the *employer.* It did not deal with the question of an *employee* who was

fired for refusing to commit a tort, as in *Delaney v. Taco Time Int'l, Inc.,* 297 Or. 10, 681 P.2d 114 (1984), much less, as here, where what plaintiffs were required to report *might* have constituted defamation, depending on the circumstances. Pennsylvania courts do not extend the public policy exception to cover discharge "based on the employee's own interpretation of ambiguous law", *Clark v. Modern Group, Ltd.,* 9 F.3d 321, 331 (3d Cir.1993) (Hutchinson, J.), or "on what an at-will employee thought was right[,]" *id.* at 330.

tion, not private, and employees cannot reasonably expect the level of privacy that they enjoy at home. Employer surveillance has become a common facet of many employment situations, and it makes little sense to say that management can record an incident of harassment on videotape but not require that its employees report that same incident.

Moreover, Title VII sets forth a countervailing policy interest in eliminating unlawful discrimination, including sexual harassment, from the workplace. Courts should be reluctant to find state public policy interests that "jostle uncomfortably" [9] with those of federal antidiscrimination law, lest in the process they subvert the latter and subject employers to vague, undefined standards under which they can be held liable no matter which course they take.

Finally, plaintiffs assert that discharging them for failure to report these incidents of alleged sexual harassment violated the independent duty of good faith and fair dealing implied in their at-will employment. Plaintiffs base this argument on their allegation that defendant ignored their reports of previous incidents more severe than the ones over which they were ultimately terminated. Thus, they contend, it was bad faith to fire them for heeding what amounted to defendant's implicit advice *not* to report such incidents.

■ The simple answer to this is that Pennsylvania recognizes no action for wrongful discharge based upon breach of the duty of good faith and fair dealing in an at-will employment contract. *See Bruffett v. Warner Comm., Inc.*, 692 F.2d 910, 913 (3d Cir.1982); *Fucci v. Graduate Hosp.*, 969 F.Supp. 310, 320 (E.D.Pa.1997); *Green v. Bryant*, 887 F.Supp. 798, 803

(E.D.Pa.1995); *Cox v. Vogel*, No. Civ.A. 97–3906, 1998 WL 438492, \*8 (E.D.Pa. July 29, 1998); *Buckwalter v. ICI Explosives USA, Inc.*, No. 96–CV–4795, 1998 WL 54355, \*16 (E.D.Pa. Jan. 8, 1998). Although the duty of good faith and fair dealing exists in an at-will employment contract, "there is no bad faith when an employer discharges an at-will employee for good reason, bad reason, or no reason at all, as long as no statute or public policy is implicated." *Fucci*, 969 F.Supp. at 320 (quoting *Green*, 887 F.Supp. at 803).

Thus, plaintiff's reliance on *Somers v. Somers*, 418 Pa.Super. 131, 613 A.2d 1211 (1992), is misplaced. That case involved a sale of stock from an uncle to a nephew, in exchange for employment as a consultant on a particular project and a share of that project's profits; the parties came to an impasse in their relationship, and nephew terminated uncle. As it came to the superior court on appeal, uncle did not even allege that his termination breached the duty of good faith and fair dealing, but alleged a breach based on nephew's actions outside the employment relationship. *Id.* at 1214; *see Fucci*, 969 F.Supp. at 320 ("The claims in [*Somers*] did not arise from the termination of an at-will employee.").[10] *Somers*, then, does not stand for the proposition that the implied covenant of good faith and fair dealing acts as an independent check on am employer's power to terminate an at-will employee. Hence, I reject plaintiff's "good faith" argument.

Because plaintiffs have alleged and cannot allege any circumstances sufficient to implicate a recognized public policy exception to the at-will rule, I must dismiss their complaint with prejudice.

---

**9.** *Cf. Saturday Evening Post Co. v. Rumbleseat Press, Inc.,* 816 F.2d 1191, 1200 (7th Cir. 1987) (Posner, J.) (declining to create federal common law rule of copyright law in area already covered by the Sherman Act, to avoid subjecting litigants to "debilitating uncertainty[ ]").

**10.** To the extent that *EEOC v. Chestnut Hill Hosp.,* 874 F.Supp. 92, 96 (E.D.Pa.1995),

states a contrary holding, I am constrained not to follow it. There, with little analysis and relying only upon *Somers*, the court held that an at-will employee could state a cause of action for wrongful discharge based upon a breach of the duty of good faith and fair dealing. In light of *Chestnut Hill*'s cursory analysis and the weight of contrary authority, I find it unpersuasive.

IV.

I recognize that, to plaintiffs and those who may someday find themselves in a similar predicament, this result may appear harsh. Accepting plaintiff's averments as true, McDaniel and Cavallucci were, subjectively at least, "trying to do the right thing," for which they both were fired. This case, unfortunately, dramatizes the fact that, sometimes, it may not be possible to be both a "good person"—that is, by honoring a request to keep a confidence—and a "good employee" at the same time. But workplace friendships and even acquaintanceships often conflict with an employer's policies, and, in the final analysis, it is the employer which ends up liable if an employee is treated unlawfully. Because of that, the employer must have the latitude to set its own workplace rules, consistent with applicable law. If that law is to be adjusted, it is for the legislature and the state courts to set the lead. "While a federal court must be sensitive to the doctrinal trends of the jurisdiction whose law it applies, it is beyond the authority of a federal court in such circumstances to create entirely new causes of action." *Wolk v. Saks Fifth Ave., Inc.,* 728 F.2d 221, 223 (3d Cir.1984). That is essentially the relief plaintiffs seek here, and it is beyond this court's power.

An appropriate order follows.

### ORDER

AND NOW, this ____ day of July 1999, upon consideration of defendant's motion to dismiss plaintiffs' complaint under Fed. R.Civ.P. 12(b)(6), dkt. no. 2, and the parties' arguments relative thereto, it is hereby ORDERED AND DIRECTED that:

1. the aforesaid motion is GRANTED;

2. plaintiffs' complaint is DISMISSED WITH PREJUDICE;

3. the Clerk of Court shall mark this case CLOSED.