## Jacobs *v.* Kraft Cheese Co., Appellant.

Argued December 7, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*V. D. Nicholson,* of *Taylor, Hoar & Nicholson,* for appellant.—Plaintiff failed to offer any evidence of in-

creased sales of his product which was a condition precedent to defendant's obligation: Campbell Coal Co. v. R. R., 293 Pa. 243; Miller v. Hotel Co., 248 Pa. 541.

In contracts depending on the satisfaction of a party or of a third person, plaintiff cannot recover on evidence that the person should have been satisfied: Corgan v. Coal Co., 218 Pa. 386; Singerly v. Thayer, 108 Pa. 291; Quigley v. De Haas, 82 Pa. 267.

*Henry Arronson,* with him *Simon Pearl,* for appellee. —Where the employee's right to recover is conditional on an act which the employer is obliged by contract to perform, the employee's rights will not be defeated by the employer's default: Singerly v. Thayer, 108 Pa. 291.

A term of a contract providing that work done shall be "satisfactory" does not necessarily mean satisfactory to the other party, but may mean that it must conform to the usual standards of such work: Lord Co. v. Finishing Works, 252 Pa. 421.

Plaintiff established a prima facie case by showing only the contract and the discharge: Mallickson v. Motor Co., 53 Pa. Superior Ct. 185; Bodman v. Fisher & Co., 268 Pa. 535.

OPINION BY MR. JUSTICE MAXEY, January 3, 1933:

Plaintiff sued to recover damages for his wrongful discharge by defendant, after nine weeks of employment, under a contract entered into by the parties to employ plaintiff as cheesemaker in defendant's plant for a period of seventy-eight weeks at $100 a week. After verdict and judgment for plaintiff, defendant appeals from denial of his motions for judgment n. o. v. and for a new trial.

In the latter part of July, 1927, plaintiff, claiming to have developed a novel and secret process for the manufacture of an improved grade of cream cheese, went to Chicago, where defendant maintained its chief establishment. Defendant wished to improve its product and

took plaintiff on as a cheesemaker in its plant for a trial period of three weeks. Before revealing the details of his alleged secret process, plaintiff sought the protection of a long-term agreement. Accordingly, the parties entered into a written contract on August 17, 1927. By its terms defendant agreed to employ plaintiff in an instructive and supervisory capacity in its cheese factories for seventy-eight weeks at a salary of $100 a week plus expenses, and plaintiff agreed to give the defendant his full time during that period. Then follows this clause in the contract: "It is understood that the obligations of Kraft made herein are conditioned upon Jacobs's producing a cream cheese satisfactory to the market and trade *as demonstrated by increased sales by Kraft of the cream cheese produced by Jacobs.*" (Italics ours.)

Plaintiff continued in defendant's employ from this date until October 4, 1927, a period of about seven weeks. During this period, the testimony for both parties tended to show plaintiff was stationed at defendant's Milledgeville, Illinois, plant, and there superintended the making up of an average of 1,800 lbs. of cheese a day, which towards the end of this period increased to about 15,000 lbs. a week, subject to some variation. When what was termed a "batch" of cheese of about 1,800 lbs. had been sufficiently processed, which required three or four days, it was packed in three-pound boxes and shipped to Chicago. It was there tested and disposed of as defendant saw fit.

On October 4, 1927, defendant expressed dissatisfaction with the quality of plaintiff's product and dismissed him from its service. This suit is for damages for plaintiff's loss of the contract salary during the remainder of the term.

Plaintiff was his only witness on direct examination. He testified that the cheese he made was of good quality and had none of the defects alleged by defendant. He also testified that he had various conversations with defendant's officers and agents in which they admitted sat-

isfaction with plaintiff's product, spoke approvingly of it, and declared that sales would increase.

Defendant's sales manager, on cross-examination, admitted an increase of production towards the end of plaintiff's employment. But defendant's evidence was all to the effect that plaintiff's cheese was of poor quality and contained such defects as to render it unfit for sale. There was also testimony that the production of plaintiff's cheese steadily decreased. Defendant's further testimony was that plaintiff's product was never marketed, that there was never any attempt to put it on sale because of the disastrous results to defendant's trade which might follow, but that, on the contrary, plaintiff's cheese was reprocessed and used as a base for an inferior grade of cheese sold under the name of "Kay." Defendant's witnesses testified that plaintiff had the complete coöperation of defendant in all matters, and that his employment was terminated only after weeks of fruitless and costly experiment.

A nonsuit was refused. The jury returned a verdict for the plaintiff in the sum of $5,468. Rules for judgment non obstante veredicto and for a new trial having been obtained, the court in banc discharged them and directed that judgment be entered on the verdict. Defendant appealed.

The trial judge in presenting the case to the jury aptly said: "In article II, in the body of the agreement, Jacobs agrees to devote his full time and knowledge at all times to the manufacture of a cheese satisfactory to the demands of the trade and market, and further agrees at all times to produce a cream cheese satisfactory to said market and trade. Now, there it tells you what is meant by satisfactory. The cheese he produced was to be satisfactory to the demands of the trade and market. This is so plain that there can be no possible misinterpretation of it; and in the final paragraph 'it is understood that the obligations of Kraft made herein are condi-

tioned upon Jacobs producing a cream cheese satisfactory to the Kraft Company.'

"Now, at first blush that might seem to change the intent of the contract, because up above it was to be satisfactory to the trade and market. Here it says 'satisfactory to Kraft.' Then it goes on and says 'which means a cheese which is satisfactory to the market and trade,' and then it goes further on to say 'as demonstrated by increased sales by Kraft of the cream cheese produced by Jacobs.' So that the obligation of Jacobs was to produce a cheese that was satisfactory to the trade and the market, and it provided that the test of that shall be the sales of that cheese.

"There might be some argument here as to whether the satisfaction of the market had been demonstrated by increased sales; but, members of the jury, that question is taken out of this case because the defendant admits that they made no sales, and there can be no argument that Jacobs's cheese was not satisfactory, based on the fact that sales did not increase, when, in fact, the defendant made no sales. It is obvious that if the defendant chose not to sell this cheese from some arbitrary reason, they cannot hold that against Jacobs. It was their implied obligation under this contract, if they were to stand on the clause in regard to increased sales, to use reasonable diligence to increase its sales. So we have this controversy narrowed right down to a very, very narrow issue, and that issue is what kind of cheese did Jacobs make?

"If Jacobs made a cheese that was good, such a cheese as would be satisfactory to the trade if it had been offered to the trade, then he is entitled to recover in this case. On the other hand, if the cheese made by Jacobs was such that it could not be sold to the trade, or at least that if sold to the trade would not be satisfactory to the trade, then Jacobs has not fulfilled his obligation and the Kraft people were justified in dismissing him, and he cannot recover. That is the issue."

The learned trial judge correctly defined and submitted the issue in this case. The plaintiff in order to recover had to produce a cream cheese "satisfactory to Kraft which means a cheese which is satisfactory to the market and trade as demonstrated by increased sales by Kraft of the cream cheese produced by Jacobs." That is the condition which Jacobs had to meet. It is expressed twice in the contract, once in the third paragraph as already quoted and earlier in the second paragraph, as follows: "Jacobs agrees......to the manufacture of a cream cheese satisfactory to the demands of the trade and market."

The parties expressly set up an exclusive test by which Jacobs's performance of his part of the agreement was to be determined. That test was "by increased sales by Kraft of the cream cheese produced by Jacobs." This being true, the contract depended for its efficacy on the performance of the implied obligation on the part of *both parties* to give the specified test a chance to function. As to such implied obligations, the following principle from 2 Williston on Contracts, section 670, applies: "No form of words is necessary to create a promise or covenant; all that is essential is that on a fair interpretation it shall appear that the alleged promisor has agreed to do the act in question. Not only may promises exist then, where the language is in terms that of promise, but also where the agreement shows that the parties must have intended an obligation though they failed so to state in clear terms. These promises, implied in fact, as they may be called, are numerous...... Clearer cases of promises implied in fact are the promises implied in every bilateral contract not only not to prevent performance by the other party of the performance by which he will become entitled to receive counter performance, but also to coöperate in such performance if coöperation is necessary from the nature of the case. In a contract to buy and sell, each party thus binds him-

self to accept the performance of the other even if he does not in terms agree to do so."

"If one party to a contract makes it impossible for the other party to perform the contract, or delays the performance of it, the party who thus makes performance impossible on the part of the other, cannot treat the default of the adverse party which is thus caused as discharging himself from liability:" 5 Page on the Law of Contracts, page 5152, section 2922.

"Necessary implication is, beyond doubt, as much a part of an instrument as if that which is so implied were plainly expressed. If it can be plainly seen from all the provisions of the instrument, taken together, that the obligation in question was within the contemplation of the parties when making their contract, or is necessary to carry their intention into effect—in other words, if it is a necessary implication from the provisions of the instrument—the law will imply the obligation and enforce it. ...... Whatever may fairly be implied from the terms or nature of an instrument is, in judgment of law, contained in it. One who undertakes to accomplish a certain result agrees by implication to supply all the means necessary thereto. ...... In fact, it may be said that contracts impose on parties, not merely obligations expressed in them, but everything which, by law, equity, and custom, is considered incidental to the particular contract, or necessary to carry it into effect. ...... Whatever the law necessarily implies in a contract is as much a part thereof as if expressly stated therein:" 6 R. C. L., page 856, section 244.

The only way to put the test prescribed by defendant into practical operation was for defendant to put plaintiff's cheese on the market and attempt to sell it. Plaintiff could not do this. Defendant had no power to declare the cheese not "satisfactory to the market" until that cheese had been given a fair chance to have itself accepted or rejected in the competition of the market. The market and not the Kraft Cheese Company was the

only tribunal before which the cheese could be tried. Defendant's failure to put the cheese on the market was a waiver of the condition imposed on plaintiff to produce a cheese "satisfactory to the market as demonstrated by increased sales by Kraft of the cheese produced by Jacobs." Jacobs was the producer. The Kraft Company was the salesman. The salesman had to make an honest and earnest effort to sell the product, and the product so offered to the market had to be rejected by it before the salesman could justly charge the producer with a default. Of course, if the cheese was so obviously inferior or repugnant to a normal sense of taste or deleterious to health as to leave no room for reasonable beings to differ as to its marketability, we would have a situation different from the one presented, for here there was conflicting testimony as to its quality and thus an issue for the jury was raised.

Appellant cites the case of Corgan v. Lee Coal Co., 218 Pa. 386, 67 A. 655, and other cases in accord therewith. In that case this court said: "It is settled law that where a person contracts to do work to the satisfaction of his employer, the employer is the judge, and the question of the reasonableness of his judgment is not a question for the jury."

The vital difference between that case and the case now before us is that, whereas in that case the employer was expressly made the sole judge of whether or not the employee's work was satisfactory, here the market was made the exclusive judge. If plaintiff had produced a cheese that upon being offered to the market proved to be so popular that its sales increased, defendant could not declare the plaintiff in default even though the cheese had been wholly unsatisfactory personally to the executives of the defendant company.

Even if the requirement had been defendant's own satisfaction, the following is pertinent: "In contracts to be performed to the satisfaction of the other party to the contract before payment by him, there is a tendency in

the cases to let the honest judgment of the party to be satisfied control in matters peculiarly the subject of personal taste, fancy, sentiment and judgment, but to construe the language to mean the satisfaction of a reasonable man where commercial quality, workmanship, fitness for use, and salability, of which others can just as well judge, are wanted. There is much confusion and conflict in the cases, however, though it seems clear that 'In doubtful cases courts have been inclined to construe agreements of this class as agreements to do the thing in such a way as reasonably ought to satisfy the defendant' [note 127], HOLMES, C. J., in Hawkins v. Graham [149 Mass. 284]. 'Especially is this likely to be the case where the contract provides definite tests or specifications for the required performance, and the satisfaction of one of the parties is not made the sole determining factor.' 1 Williston on Contracts, section 45:" Costigan, Performance of Contracts, 2d edition, page 45.

While plaintiff was excused by defendant's nonmarketing of his product from showing an increase in sales, still, in order to recover, he had to show prima facie that he produced a cheese suitable for marketing. He did not have to show that the cheese was satisfactory to defendant, or to some third party who had been expressly made arbiter. He gave his cheese a quality rating by his own testimony and by alleged admissions of defendant's sales manager. The fact that the defendant executed the long term contract with plaintiff after a three weeks' trial employment, during which period he made at least 1,800 lbs. of cream cheese daily, which was, according to plaintiff's testimony, pronounced by the defendant's general manager as "perfectly satisfactory," was evidence from which, with other evidence in the case, the jury might reasonably infer that the discharge of plaintiff by defendant was for a reason legally inadequate. During his trial employment he did not reveal his cheese making process; after the long term contract was entered into, he did so.

The only other question requiring discussion is whether or not there was a material variance between plaintiff's allegata and probata. The rulings of this court in the following cases negative defendant's contention on this point: R. R. Co. v. McGovern, 29 Pa. 78, and Miller v. Smith Woolen Machine Co., 220 Pa. 181, 69 A. 598, in which last named case the trial judge's answer to plaintiff's seventh request, reading as follows, was held to be correct: "Of course, if they [plaintiffs] did erect a dryer fitted for the purpose of drying glazed cotton wadding, and they were prevented from operating it by reason of a defect of the glazing apparatus, or any other defect due to the fault of defendants, why of course the verdict must be for the plaintiffs."

The judgment is affirmed.