Brion O. DONAHUE, Appellant,

v.

**FEDERAL EXPRESS CORPORATION
and Robert W. Marshall, Appellees.**

Superior Court of Pennsylvania.

Submitted Jan. 10, 2000.
Filed May 9, 2000.

11. PennDOT also argues that Terraciano has unclean hands because she received the automatic supersedeas granted by 75 Pa.C.S. § 1550(b) and continued to enjoy the use of her driving privileges during the seven-year lapse in this matter. We reject PennDOT's contention that Terraciano somehow acted unfairly, or with fraud or deceit, by accepting the statutory reprieve available to all appellants under the Vehicle Code.

Angelo E. Quaranta, Pittsburgh, for appellant.

Peter J. Ennis, Pittsburgh, for appellee.

Before McEWEN, President Judge, LALLY–GREEN, J., and CIRILLO, President Judge Emeritus.

LALLY–GREEN, J.:

¶ 1 In this employment case, Appellant Brion O. Donahue appeals from the order dated April 29, 1999, granting preliminary objections in the nature of a demurrer filed by Defendants/Appellees Federal Express Corporation ("FedEx") and Robert W. Marshall and entering judgment in Appellees' favor. We affirm.

¶ 2 On January 22, 1999, Appellant filed a complaint against FedEx and Marshall, alleging the following. Appellant was a FedEx employee from November 1979 until January 1997. Complaint, Docket Entry 1, ¶ 4. Appellant's final position was Commercial MX Service Administrator. *Id.* Marshall was Appellant's immediate supervisor. *Id.*, ¶ 3.

¶ 3 Appellant questioned numerous invoices which did not comport with repair orders in his department. *Id.*, ¶ 6. Appellant also called FedEx's attention to other improprieties, such as FedEx's failure to pay invoices and Marshall's practice of directing auto body work to a Cleveland auto body shop owned by a person with whom Marshall vacationed. *Id.*, ¶ 12. After Appellant complained to Marshall about the invoice-discrepancy issue, Marshall accused Appellant of gross misconduct. *Id.*, ¶ 6. Specifically, Appellant was accused of making a racial remark in front of another FedEx employee, and was accused of making derogatory remarks about Marshall to vendors and others. *Id.*, ¶ 7. In the months leading to his discharge, FedEx management denied Appellant the clerical assistance that he requested, gave Appellant additional duties of tire purchasing and file maintenance, and ordered Appellant to falsify data to meet administrative requirements. *Id.*, ¶ 8.

¶ 4 FedEx has a Guaranteed Fair Treatment Procedure ("GFTP") for employee grievances. *Id.*, ¶ 5. Appellant appealed his termination through Step 1 of the GFTP. *Id.* FedEx management upheld the termination, concluding that Appellant violated FedEx's Acceptable Conduct Policy. *Id.*, ¶ 10 & Exhibit D. Appellant appealed through Step 2 of the GFTP, alleging that Marshall was seeking retribution for exposing the vendor non-payment issue. *Id.*, ¶ 11 and Exhibit E. FedEx management again upheld the termination. *Id.*, ¶ 13. Finally, Appellant appealed through Step 3 of the GFTP, alleging that FedEx accused him of making unprofessional remarks, "but did not identify the purported comments, nor give [Appellant] the opportunity to deny the same." *Id.*, ¶ 14. Again, FedEx management upheld the termination. *Id.*, ¶ 16.

¶ 5 In Count 1 of his complaint, labeled "Wrongful Termination," Appellant alleges: (1) FedEx breached the implied covenant of good faith and fair dealing in at-will employment contracts; (2) FedEx violated public policy insofar as the termination violates the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.;* (3) Appellant supplied sufficient additional consideration to remove his status from that of an at-will employee; and (4) FedEx violated public policy by retaliating against him for lodging complaints against Marshall. *Id.*, ¶ 19.

¶ 6 Count 2 of the complaint alleges that FedEx violated the PHRA. *Id.*, ¶¶ 21–26. Count 3 alleges that Marshall intentionally interfered with Appellant's contractual relations with FedEx, and that Marshall and FedEx defamed Appellant. *Id.*, ¶¶ 27–35. Count 4 alleges that FedEx breached its implied employment contract with Appellant. *Id.*, ¶¶ 36–38.[1]

¶ 7 On March 17, 1999, FedEx and Marshall filed preliminary objections in the nature of a demurrer. Docket Entry 3.

---

1. On appeal, Appellant raises no challenge to the dismissal of his PHRA, intentional interference, and defamation claims.

Appellant filed a responsive brief. Docket Entry 5. On April 29, 1999, the esteemed trial court, the Honorable Eugene Strassburger, granted the preliminary objections and entered judgment in favor of FedEx and Marshall. This appeal followed.[2]

¶ 8 Appellant raises four issues on appeal:

I. Whether the court below erred in granting Preliminary Objections where appellant raised [the] breach of the duty of good faith and fair dealing exception to [the] at-will employment rule.

II. Whether the court below erred in granting Preliminary Objections where [the] doctrine of necessary implication dictated that parties in an employment relationship do and perform those things that according to reason and justice they should do in order to carry out the employment relationship.

III. Whether the court below erred in granting Preliminary Objections where [the] Guaranteed Fair Treatment Procedure of employer created a promise to dismiss only for cause.[3]

IV. Whether the court below erred in granting Preliminary Objections where appellant alleges employer specifically intended to harm appellant.

Appellant's Brief at 3.

 ¶ 9 Our standard and scope of review are well settled.

Our standard of review mandates that on an appeal from an order sustaining preliminary objections which would result in the dismissal of suit, we accept as true all well-pleaded material facts set forth in the Appellant['s] complaint and all reasonable inferences which may be drawn from those facts. This standard is equally applicable to our review of PO's in the nature of a demurrer. Where, as here, upholding sustained preliminary objections would result in the dismissal of an action, we may do so only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections.

We review for merit and correctness—that is to say, for an abuse of discretion or an error of law. This case was dismissed at the preliminary objections stage on issues of law; our scope of review is thus plenary.

*Ellenbogen v. PNC Bank N.A.*, 731 A.2d 175, 181 (Pa.Super.1999) (citations and footnote omitted).

¶ 10 First, Appellant argues that the trial court erred by dismissing his claim for breach of the implied duty of good faith and fair dealing. Specifically, Appellant claims that FedEx breached this duty "by terminating him in contravention of its GFTP and engaging in a sham review of his conduct in the GFTP." Appellant's Brief at 10.

---

2. In his Concise Statement of Matters Complained of on Appeal, Appellant contended that the court erred by: (1) dismissing his wrongful termination claim; (2) finding that the law does not impose an implied duty of good faith and fair dealing in an at-will employment relationship; (3) ruling that no statute or public policy was implicated by his termination; (4) failing to find additional consideration to rebut the presumption of at-will employment; (5) failing to find that Marshall specifically intended to harm Appellant; and (6) failing to find an implied employment

contract arising from the GFTP. Docket Entry 12.

3. We note that Appellant's Statement of Questions Involved does not perfectly correspond to the argument section of his Brief. Question III raises the issue of whether the GFTP created a promise to dismiss only for cause. The corresponding argument section concerns the "additional consideration" exception to the presumption of at-will employment. This discrepancy has not hampered our review.

¶ 11 Every contract in Pennsylvania imposes on each party a duty of good faith and fair dealing in its performance and its enforcement. *Kaplan v. Cablevision of Pa., Inc.*, 448 Pa.Super. 306, 671 A.2d 716, 722 (1996), *appeal denied*, 546 Pa. 645, 683 A.2d 883 (1996), citing, *inter alia, Somers v. Somers*, 418 Pa.Super. 131, 613 A.2d 1211, 1213 (1992), *appeal denied*, 533 Pa. 652, 624 A.2d 111 (1993). Good faith has been defined as "honesty in fact in the conduct or transaction concerned." *Kaplan*, 671 A.2d at 722. Appellant relies on *Somers* for the proposition that the implied duty of good faith and fair dealing applies to at-will employment relationships.

¶ 12 In that case, plaintiff Somers entered into an at-will employment relationship (as a consultant) with a corporation. The consulting contract further provided that if net profits were realized from a particular project, Somers would receive 50% of the profits. *Somers*, 613 A.2d at 1212. In order for profits to be realized, it was necessary for the corporation to resolve a claim with a third party. *Id.* Somers and the corporation disagreed as to how to handle this claim; as a result, Somers was fired. *Id.* Moreover, Somers alleged that the corporation showed a lack of good faith and due diligence in resolving its dispute with the third party, and in settling the claim for significantly less than was owed, thereby depriving him of approximately $3 million as his share of the proceeds. *Id.* at 1215. The trial court dismissed Somers' claim for breach of the implied duty of good faith and fair dealing.

¶ 13 This Court reversed, stating that "the duty to perform contractual obli-gations in good faith does not evaporate merely because the contract is an employment contract, and the employee has been held to be an employee at will." *Id.* at 1213, citing *Baker v. Lafayette College*, 350 Pa.Super. 68, 504 A.2d 247 (1986), *affirmed*, 516 Pa. 291, 532 A.2d 399 (1987), and *Jacobs v. Kraft Cheese Co.*, 310 Pa. 75, 164 A. 774 (1933).[4] We concluded that Somers should have the opportunity to establish that the corporation acted in bad faith when it settled the claim in such a manner as to deprive him of his fair share of the profits related to the project. *Somers*, 613 A.2d at 1215.

¶ 14 *Somers* and the cases cited therein provide that, in an at-will employment relationship, the duty of good faith and fair dealing applies to those contractual terms that exist beyond the at-will employment relationship. For example, the plaintiff in *Somers* could recover for breach of implied duties connected to the profit sharing provision, but could not recover for the termination *per se*.

¶ 15 *Baker* involved a two-year employment contract between a college and a professor. The college's faculty handbook, which was explicitly made part of the contract itself, obliged the college to conduct an honest and meaningful evaluation of the professor's performance before deciding whether or not to extend the contract beyond its original term. *Baker*, 504 A.2d at 255.

¶ 16 The Court affirmed the grant of summary judgment in favor of the college and held that the implied duty of good faith and fair dealing applied to this re-evaluation provision.[5] *Id.* Thus, the col-

---

4. In *Jacobs*, plaintiff Jacobs approached Kraft with a new method for making cream cheese. Kraft hired Jacobs for a fixed term of 78 weeks. The employment contract expressly stated that Jacobs' employment was conditioned on his producing a cream cheese "satisfactory to the market," as measured by sales. After nine weeks, Kraft fired Jacobs, declaring that the cheese was unmarketable. Kraft had not attempted to market the product. A jury found in Jacobs' favor. Our Supreme Court affirmed the verdict, holding that, under the circumstances, Kraft had an implied duty to attempt to market the cheese before firing Jacobs.

5. In *Baker*, the trial court had granted summary judgment to Lafayette College on Baker's breach of contract/bad faith claim. We affirmed, holding that the record contained no evidence tending to establish that the College's review procedures were a sham or oth-

lege was contractually obligated "to render a sincere and substantial performance of these contractual undertakings, complying with the spirit as well as the letter of the contract." *Id.* The *Baker* Court stressed that its holding was narrowly tailored to the facts of that case:

> We emphasize that our holding is a narrow one. This case does not present the more difficult issue whether an obligation of good faith and fair dealing should be implied into any employer-employee relationship, including at-will employment. Consequently, we do not decide that issue. We hold only that when an employer such as the College here expressly provides in an employment contract for a comprehensive evaluation and review process, we may look to the employer's good faith to determine whether the employer has in fact performed those contractual obligations.

*Id.*

¶ 17 In the years since *Baker* was decided, it appears that no Pennsylvania appellate court has held that an implied duty of good faith and fair dealing applies to termination of a pure at-will employment relationship. Indeed, our Supreme Court has held that "an at will employee has no cause of action against his employer

for termination of the at-will relationship except where that termination threatens clear mandates of public policy." *Pipkin v. Pennsylvania State Police*, 548 Pa. 1, 5, 693 A.2d 190, 191 (1997). *See also Werner v. Zazyczny*, 545 Pa. 570, 579, 681 A.2d 1331, 1335 (1996); *Paul v. Lankenau Hosp.*, 524 Pa. 90, 95, 569 A.2d 346, 348 (1990).[6] In keeping with the above authority, we hold that Appellant cannot as a matter of law maintain an action for breach of the implied duty of good faith and fair dealing, insofar as the underlying claim is for termination of an at-will employment relationship.

¶ 18 Appellant suggests that he can maintain a cause of action for breach of the implied duty of good faith and fair dealing arising out of his claim that he was not treated fairly under the GFTP. Appellant's Brief at 10. If the GFTP were expressly incorporated into Appellant's employment contract, his claim would be analogous to *Baker*, which held that such a claim is viable. Appellant's complaint, however, points to no specific provision of the GFTP indicating that its provisions imposed separate contractual duties on FedEx.[7] In fact, the GFTP expressly states that "the policies and procedures set forth by the Company provide guidelines for manage-

---

erwise undertaken in bad faith. *Baker*, 504 A.2d at 256. Our Supreme Court affirmed. *Baker*, 516 Pa. 291, 532 A.2d 399 (1987).

**6.** In fact, a substantial number of federal cases interpreting Pennsylvania law have squarely held that "Pennsylvania recognizes no action for wrongful discharge based upon breach of the duty of good faith and fair dealing in an at-will employment contract." *McDaniel v. American Red Cross*, 58 F.Supp.2d 628, 633–634 (W.D.Pa.1999), citing *Bruffett v. Warner Communications*, 692 F.2d 910, 913 (3d Cir.1982), *Fucci v. Graduate Hosp.*, 969 F.Supp. 310, 320 (E.D.Pa. 1997), *Green v. Bryant*, 887 F.Supp. 798, 803 (E.D.Pa.1995), *Cox v. Vogel*, 1998 U.S. Dist. LEXIS 11586, *20, 1998 WL 438492, at *8 (E.D.Pa. July 29, 1998), and *Buckwalter v. ICI Explosives USA, Inc.*, 1998 U.S. Dist. LEXIS 276, *47–48, 1998 WL 54355, at *16 (E.D.Pa. Jan. 8, 1998). The *McDaniel* court further held that "although the duty of good faith and

fair dealing exists in an at-will employment contract, there is no bad faith when an employer discharges an at-will employee for good reason, bad reason, or no reason at all, as long as no statute or public policy is implicated." *McDaniel*, 58 F.Supp.2d at 634 (citations omitted).

**7.** In this respect, Appellant's claim is more analogous to *Banas v. Matthews Int'l Corp.*, 348 Pa.Super. 464, 502 A.2d 637, 647–648 (1985) (*en banc*). In that case, Banas was fired for using company materials for personal projects without permission. Banas alleged that he had permission, and pointed to sections of the employee handbook which stated that employees could use company materials for certain personal projects so long as they had permission. We found that the handbook was immaterial to the case, and that Banas could be fired at will regardless of the handbook because it did not create any contractual promise of job security.

ment and other employees during employment but do not create contractual rights regarding termination or otherwise." Docket Entry 1 (Complaint), Exhibit A, page 3. Because Appellant has failed to allege facts indicating that the GFTP imposes any additional contractual duties on FedEx, Appellant's first claim lacks merit.

∎ ¶ 19 Appellant also argues that his termination violates public policy because he was fired for "blowing the whistle" on FedEx's failure to pay invoices and other unscrupulous practices. Appellant's Brief at 11–12. Generally, as noted above, no cause of action exists for termination of an at-will employment relationship unless the termination violates public policy. *See Pipkin, supra.* For example, "an employer (1) cannot require an employee to commit a crime, (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specially prohibited from doing so by statute." *Spierling v. First Am. Home Health Servs., Inc.*, 737 A.2d 1250, 1252 (Pa.Super.1999), quoting *Hennessy v. Santiago*, 708 A.2d 1269, 1273 (Pa.Super.1998). In an appropriate case, the courts may announce that a particular practice violates public policy, even in the absence of a legislative pronouncement to that effect. *Shick v. Shirey*, 552 Pa. 590, 602, 716 A.2d 1231, 1237 (1998). On the other hand, a court's power to announce public policy is limited: "[p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." *Id.* (citations omitted).

¶ 20 Our Courts have repeatedly rejected claims that a private employer violated public policy by firing an employee for whistleblowing, when the employee was under no legal duty to report the acts at issue. *See Geary v. United States Steel Corp.*, 456 Pa. 171, 183, 319 A.2d 174, 180 (1974) (no wrongful discharge claim where

employee complained to superiors about substandard and potentially unsafe quality of employer's product); *Spierling*, 737 A.2d at 1254 (no wrongful discharge claim where employee was fired after searching discarded files for evidence of Medicare fraud and reporting such fraud to investigators); *Hennessy*, 708 A.2d at 1274 (no wrongful discharge claim where counselor alerted authorities to rape of one patient by another); *Hunger v. Grand Cent. Sanitation*, 447 Pa.Super. 575, 670 A.2d 173, 176 (1996) (no wrongful discharge claim where employee investigated and reported unsubstantiated suspicion that employer violated Solid Waste Management Act), *appeal denied*, 545 Pa. 664, 681 A.2d 178 (1996); *Holewinski v. Children's Hosp.*, 437 Pa.Super. 174, 649 A.2d 712, 715 (1994) (no wrongful discharge claim where employee voiced concerns over the abilities of her newly-hired supervisor), *appeal denied*, 540 Pa. 641, 659 A.2d 560 (1995); *Krajsa v. Keypunch, Inc.*, 424 Pa.Super. 230, 622 A.2d 355, 359–360 (1993) (no wrongful discharge claim where employee reported that employer overbilled on a contract).

∎ ¶ 21 Appellant contends that employees should not be fired from private companies for reporting unscrupulous practices.[8] Appellant has failed to identify any relevant statutes or legal precedents indicating that such retaliation violates public policy. Accordingly, Appellant's claim for wrongful discharge under the public policy exception cannot stand.

¶ 22 Next, Appellant argues that the trial court failed to recognize duties imposed on FedEx by the "doctrine of necessary implication." Appellant's Brief at 13–15. According to Appellant, contracting parties have a duty to do those things that reason and justice dictate are necessary to ensure that the other party is not deprived of the fruits of the contract. *Id.* Upon review of this claim, we find that it is

---

**8.** Unlike Appellant, public employees are protected by Pennsylvania's Whistleblower Law. *Holewinski,* 649 A.2d at 715; 43 P.S. § 1421 *et seq.*

indistinguishable from Appellant's arguments concerning the implied duty of good faith and fair dealing. For the reasons set forth above, this claim lacks merit.

¶ 23 Next, Appellant argues that he furnished sufficient additional consideration to overcome the presumption that he is an at-will employee. An employee can defeat the at-will presumption by establishing that he gave his employer additional consideration other than the services for which he was hired. *Cashdollar v. Mercy Hosp. of Pittsburgh*, 406 Pa.Super. 606, 595 A.2d 70, 72–73 (1991). Additional consideration exists "when an employee affords his employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform." *Id.* at 73 (citation omitted). For example, in *Cashdollar*, we found sufficient additional consideration where the employee, in response to the employer's persistent recruitment efforts, gave up a stable position in another state, sold his house, and relocated to a new city with his pregnant wife, only to be fired after sixteen days on the job. *Id.* On the other hand, our Courts have found no additional consideration where the employee "has suffered detriments, in the course of his or her employment, that are 'commensurate with those incurred by all manner of salaried professionals.'" *Id.*, citing *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571, 580 (1986) (no additional consideration when employee was fired after eight years over a difference of opinion with his employer, even though employee had originally moved from Newark to Pennsylvania and had foregone other employment opportunities over the years), *appeal denied*, 532 Pa. 665, 616 A.2d 986 (1992).

¶ 24 Appellant argues that he gave additional consideration by conferring "substantial, superior job performance." Appellant's Brief at 17. A general allegation of superior work performance is insufficient to establish additional consideration.

First, performing well on the job does not generally confer a substantial benefit on his employer beyond that which the employee is paid to do. Moreover, performing well on the job does not generally constitute a detriment beyond that which is incurred by all manner of salaried professionals. After reviewing Appellant's complaint as a whole, we conclude that Appellant has alleged no facts tending to establish that he conferred additional consideration. This claim fails.

¶ 25 Finally, Appellant argues that the trial court erred in granting preliminary objections because Appellant alleged that FedEx specifically intended to harm him. In *Krajsa*, 622 A.2d at 360, we held an employee cannot maintain a cause of action for wrongful discharge based on a "specific intent to harm" theory. We reasoned that such a theory was no longer viable in light of our Supreme Court's decision in *Paul, supra*, which held that an at-will employee has no cause of action for wrongful discharge unless the termination violates public policy. *Id.* Accordingly, Appellant's "specific intent to harm" claim fails as a matter of law.

¶ 26 Order affirmed.

¶ 27 McEWEN, President Judge, Concurs in the Result.