## Kline v. Koppenheffer & Sons Trucking Co. Inc.

*Edwin L. Stock,* for plaintiff.
*Joseph L. Haines,* for defendant.

SPRECHER, *J.,* March 22, 2010—Plaintiff filed an appeal to a verdict entered by this court on March 31, 2009, following a bench trial. Defendant filed a cross-appeal. This opinion is filed pursuant to Pa.R.A.P. 1925.

## FACTS

Plaintiff, Dennis R. Kline, filed the instant action alleging that he was wrongfully discharged because he had refused to participate in the 401(K) plan instituted by defendant, Koppenheffer & Sons Trucking Company Inc., his employer, and that his termination was a violation of Pennsylvania public policy. He sought vacation

pay, overtime wages for which he was compensated at his regular rate of $12 per hour, and damages for his wrongful discharge. At trial defendant stipulated that plaintiff was entitled to an additional eight hours of vacation pay. Defendant denied that plaintiff was entitled to overtime compensation pursuant to the Fair Labor Standards Act because plaintiff's employment fell within the motor carrier exemption to the overtime requirement. The following evidence was gleaned at trial.

Jeffrey Koppenheffer is the president and owner of defendant. Defendant is in the business of hauling United States mail to post offices under 15 postal contracts with the United States Postal Service. Defendant is based in Fleetwood, Pennsylvania.

Plaintiff was defendant's at-will employee. Plaintiff was hired sometime in December 1994. He was based at Jetson Direct Mail in Hamburg, Pennsylvania. Plaintiff was a shuttle driver/jockey person. He staged trailers in and out of docks and hauled mail to various post offices and other mailing plants located on his route. Plaintiff's primary drop was from Hamburg to the Reading Post Office.

Defendant's employees are paid biweekly. During his employment with defendant, plaintiff never requested overtime wages and was always paid his regular rate of $12 per hour for any overtime work. Plaintiff worked for defendant for over one year.

Defendant's employees wanted some type of security for their future, such as a pension plan. In 1995 Jeffrey Koppenheffer contacted Pennsylvania National Bank to institute a defined benefit plan pursuant to section 401(K)

of the Federal Employment Retirement and Income Security Act of 1974, as amended. The plan went into effect on January 1, 1996, and was mandatory in that all employees were required to participate according to bank. No employee was to sustain any reduction in the gross wages; instead, defendant was redirecting $.89 per hour of each employee's gross wage as a contribution to the plan. Meetings about the plan were held at various times on different dates. Plaintiff did not attend any of the meetings. Plaintiff told Mr. Koppenheffer that he chose not to belong to a 401(K) plan because he had been a teamster and had a pension plan from that job.

All employees received paperwork to fill out regarding the plan. Plaintiff accepted the documents but did not complete and return the enrollment form to defendant. Mr. Koppenheffer made a special trip to meet plaintiff at his dock on January 5, 1996, because he needed to obtain plaintiff's enrollment form. Plaintiff was the only employee who had not returned the enrollment form. According to Mr. Koppenheffer, plaintiff informed him that he would quit before he would participate in a 401(K) plan, turned, and walked away from him. That was the last day plaintiff appeared for work.

Plaintiff testified that he had believed that participation in the plan was voluntary based on his reading of the plan. However, he had refused to return the enrollment form because he had not wanted to put his name on anything.

A blizzard started on Saturday, January 6, 1996, and ended on Monday, January 8, 1996. Defendant was not opened for business on January 8, 1996 and January 9,

1996. Defendant's mail trucks were back on the roads on Wednesday, January 10, 1996. Plaintiff did not report to work on January 10, 1996. Plaintiff testified that his apartment complex had not been plowed until the weekend after the blizzard, so he had not been able to report to work. Plaintiff stated that he had called defendant daily regarding his situation. Plaintiff was ready to report to work on Monday, January 15, 1996. However, Mr. Koppenheffer called him on Sunday, January 14, 1996, to inform him that he was no longer needed because participation in the plan was mandatory and he had not turned in his enrollment form.

Mr. Koppenheffer testified that plaintiff had not contacted defendant daily during the week of the blizzard. Defendant's principals had attempted several times to reach plaintiff by telephone to ascertain his intentions regarding his employment at defendant. They spoke with plaintiff on only one occasion on January 10, 1996, and plaintiff had told defendant that he was still snowbound. Plaintiff did not call on January 11, 1996 or January 12, 1996, with any further updates or explanations even though he had not returned to work. Mr. Koppenheffer concluded from plaintiff's conduct that plaintiff had voluntarily terminated his employment. Therefore, on January 14, 1996, Mr. Koppenheffer had advised plaintiff that by virtue of his failure to report to work his position had been filled.

Based on this record this court entered the following decision:

Count—Verdict in favor of plaintiff and against defendant in the amount of $96, for an additional eight hours of vacation pay.

Count II—Verdict in favor of defendant and against plaintiff on the issue of overtime compensation.

Count III—Verdict in favor of defendant and against plaintiff on the issue of wrongful discharge.

Plaintiff filed the instant appeal. Defendant then filed its cross-appeal.

## ISSUES

Plaintiff raises the following two issues in his concise statement of errors complained of on appeal.

(1) This court erred in entering a verdict in favor of defendant and against plaintiff on Count II on the issue of overtime compensation. Defendant failed to provide sufficient evidence that it comes within the purview of the motor carrier exemption of the Fair Labor Standards Act. Thus, pursuant to the FLSA, plaintiff is entitled to time and one-half for each hour of overtime he worked while he was employed by defendant. On this basis, plaintiff is entitled to receive damages in the amount of an additional $3,696 for his 616 overtime hours.

(2) This court erred in entering a verdict a favor of defendant and against plaintiff on Count III on the issue of wrongful discharge. Plaintiff was wrongfully terminated from his job as a truck driver with defendant. Plaintiff was fired in retaliation for exercising his rights under the Wage Payment and Collection Law and objecting to deductions from his wages that would have violated the Wage Payment and Collection Law, since the deductions that defendant was going to make for the plan were not authorized by plaintiff and were not authorized

or required by law. In the alternative, this court should have found that plaintiff was constructively discharged in January 1996 because he was subjected to intolerable working conditions and was forced to resign. As a result of the wrongful termination, plaintiff is entitled to $198,575 in damages, which sum is the income he lost between the years 1996 and 2005 when his annual income was less than the amount of money he had made while working for defendant.

Defendant's concise statement of errors complained of on appeal consists of the following:

(1) This court erred by denying defendant's motion for an award of reasonable attorney's fees and costs in that it failed to conclude that plaintiff's conduct in initiating and prosecuting his litigation displayed a consistent pattern of conduct which was vexatious, obdurate, frivolous, dilatory, and arbitrary, falling clearly within the purview of 42 Pa. C.S. §2503 et seq. Plaintiff's cause of action for overtime compensation and wrongful discharge were contrary to well-established law. Moreover, it was clear that plaintiff's prosecution of the action since 1998 was dilatory in that three termination notices were issued on November 26, 1999, April 2, 2002, and April 5, 2004, the result of which extended the litigation for an additional six years. This court should have reasonably concluded, if not based upon the illegitimacy of the claims asserted by plaintiff, but also on the basis of plaintiff's failure to have aggressively prosecuted his own action, that the said causes of action clearly lacked merit.

This court shall address these issues seriatim.

## DISCUSSION

Plaintiff first raises the issue of overtime compensation. He believes that defendant failed to provide sufficient evidence that it comes within the purview of the motor carrier exemption of the Fair Labor Standards Act. This contention is without merit.

The motor carrier exemption provides an exemption from overtime compensation requirements if a driver is employed by a carrier whose duties, in part, affect the safe operation of motor vehicles in furtherance of interstate commerce. Defendant is primarily involved in the delivery of mail products which originate in other states and countries. Defendant has 15 contracts with the United States Postal Service to deliver the mail. Plaintiff was defendant's employee who drove a truck to deliver the mail to post offices. Therefore, defendant was an integral part of an overall interstate commerce delivery system. As such, he fell within the motor carrier exemption.

Plaintiff never requested overtime compensation during the period that he was employed by defendant. This fact alone is a clear indication that plaintiff knew that he was not entitled to overtime compensation and did not expect it. Based on the above reasons, this court found in favor of defendant on the issue of overtime compensation.

Plaintiff's second complaint concerns the issue of wrongful discharge based on two theories, retaliation for exercising his rights under the Wage Payment and Col-

lection Law and constructive discharge due to intolerable working conditions. This complaint is meritless.

This court found Mr. Koppenheffer's testimony to be more credible than that of plaintiff regarding the recitation of events that led to plaintiff's termination. Therefore, this court found that plaintiff caused his own problems. Plaintiff did not appear for work and did not apprise defendant of the reasons for not appearing for work or his intentions to work in the future. He refused to sign the enrollment form and had stated that he would quit before he would participate in the plan. He refused to attend any information sessions on the plan and chose to block implementation of the plan by refusing to make an election and signing the form.

Plaintiff contends that he was fired in retaliation for exercising his rights under the Wage Payment and Collection Law. This argument is frivolous for several reasons.

First, if plaintiff had believed that the plan had not been mandatory as he testified, then he should have signed the enrollment form and marked it accordingly. Plaintiff did not do anything because he did not want to put his name on anything. Thus, he did nothing and did not exercise his right under the Wage Payment and Collection Law.

A more significant factor, however, is that plaintiff was an at-will employee. Generally, no cause of action exists for the termination of an at-will employment relationship unless the termination violates public policy. For example, an employer cannot require an employee to com-

mit a crime, cannot prevent an employee from complying with a statutorily imposed duty, and cannot discharge an employee when specifically prohibited from doing so by statute. *Donahue v. Federal Express Corporation,* 753 A.2d 238 (Pa. Super. 2000).

In the case sub judice plaintiff's termination did not violate any public policy. There was no contract between the parties. Defendant could increase or decrease plaintiff's wages as he desired. Plaintiff said that he would quit before he enrolled in the plan. Defendant believed that plaintiff had done just that. Defendant did not violate any law. It simply exercised its prerogative as an employer. In hindsight plaintiff may now consider his actions improvident, especially due to his decreased earnings. However, defendant's response to plaintiff's actions was not against public policy and was reasonable under the facts as presented. Defendant had the legal right to terminate plaintiff.

Defendant's claim for attorney fees is without merit. This court did not find plaintiff's claims completely frivolous. It was determined during the pendency of this case that plaintiff was entitled to wages and vacation pay. Thus, the complaint had validity. This court did not agree with plaintiff's theories of law, but it did not find that plaintiff's conduct was obdurate, vexatious, or arbitrary in pursuing the theories.

Moreover, following plaintiff's motion for summary judgment, the Honorable Stephen B. Lieberman, a prior judge assigned to the instant case, ordered that plaintiff's claims for wrongful discharge and overtime pay proceed

to trial. He did not find in favor of defendant and dismiss the claims as defendant requested.

Defendant also maintains that plaintiff's conduct in the prosecution of his case was dilatory. This court was assigned to this case in 2007. This case has proceeded in a timely manner since then. Fees are awarded for dilatory conduct because a lack of diligence causes unnecessary delays and additional legal work. *Gertz v. Temple University-Commonwealth System of Higher Education,* 443 Pa. Super. 177, 661 A.2d 13 (1995). In the case sub judice this case sat in limbo with no action being taken by any party so no additional expenses were occurred. For this reason, this court did not award attorney's fees for dilatory conduct.

In accordance with the foregoing opinion, this court submits that its verdict should be affirmed and the appeals dismissed.