J-A09039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TODD M. SOUDERS, ADMINISTRATOR OF THE ESTATE OF TINA M. SOUDERS, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| TUSCARORA WAYNE INSURANCE COMPANY AND ASHLEY HANN, ADMINISTRATRIX OF THE ESTATE OF RICKY L. HANN, DECEASED AND CAROL SUE KEEFER AND RALPH HANN AND W. JEAN HANN, A/K/A WILDA J. HANN, | |
| Appellees | No. 1551 MDA 2015 |

Appeal from the Judgment Entered August 14, 2015
in the Court of Common Pleas of Fulton County
Civil Division at No.: 2013-00214

BEFORE:  FORD ELLIOTT, P.J.E., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JULY 07, 2016**

Appellant, Todd M. Souders, as administrator of the estate of his estranged, deceased wife, Tina M. Souders, appeals from the judgment of August 14, 2015, granting summary judgment in favor of Appellees, Tuscarora Wayne Insurance Company, Ashley Hann, as administratrix of the estate of Ricky L. Hann, Carol Sue Keefer, Ralph Hann, and W. Jean Hann a.k.a. Wilda J. Hann, and denying Appellant's motion for summary judgment

_____

[*] Retired Senior Judge assigned to the Superior Court.

in this declaratory judgment action.[1]  For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the trial court's October 26, 2015 opinion and our independent review of the certified record.

> The facts relevant to the disposition of the instant declaratory judgment action come in the wake of tragic events culminating in the death of Tina Souders.  Ricky Hann, the son of [Appellees Ralph and Jean Hann], was arrested and charged with kidnapping on February 18, 2011.  With the assistance of a bail bondsman, Hann was able to post bail and was subsequently released from the Franklin County Jail.  The following day, [Ricky] Hann went to stay at his sister, [Appellee] Carol Sue Keefer's, residence which she was renting from her parents, [Appellees] Ralph and Jean Hann (the Hanns).  [Appellant] alleges that [Appellee] Ms. Keefer allowed her brother to take a gun or that Ricky Hann was able to retrieve one of his guns because they were not properly secured.  Tragically, on February 20, 2011, Ricky Hann shot and killed Ms. Souders before turning the gun on himself.

> [Appellant] filed two wrongful death and survival actions, first against [Appellee] Ashley Hann as [a]dministrator of the [e]state of Ricky L. Hann, [d]eceased, and [Appellee] Ms. Keefer on March 23, 2011, then against [Appellees] the Hanns on March 1, 2013.  [Appellant] alleges that Ms. Souders['] death was the result of the negligence of [Appellee] Ms. Keefer in safekeeping Ricky Hann's guns, and that [Appellees] the Hanns, as the owners of the residence, had a duty to insure that Ricky Hann did not have access to his guns.

> [Appellant] instituted this declaratory judgment action seeking a finding that [Appellee] Ms. Keefer is an "insured" under [Appellee] Tuscarora Wayne['s] farm insurance policy

---

[1] The only Appellee who filed a brief in this matter is Tuscarora Wayne Insurance Company (Tuscarora Wayne).

[(the Policy)] issued to [Appellees] the Hanns. In the [c]omplaint filed on June 4, 2013, [Appellant] asserted that [Appellee] Ms. Keefer is an insured and that [Appellee] Tuscarora Wayne is required to defend and indemnify [Appellee] Ms. Keefer in connection with the underlying lawsuit. On December 23, 2013, [Appellee] Tuscarora Wayne filed an [a]nswer to [c]omplaint and [n]ew [m]atter. [Appellant] filed a [r]eply to [n]ew [m]atter on January 16, 2014. Thereafter, [Appellee] Ms. Keefer filed an [a]nswer to [c]omplaint and [n]ew [m]atter on January 21, 2014.

On April 20, 2015, [Appellee] Tuscarora Wayne filed a [m]otion for [s]ummary [j]udgment, along with a [m]emorandum of [l]aw in [s]upport of [m]otion for [s]ummary [j]udgment. [Appellee] Tuscarora Wayne asserted that there is no issue of fact that [Appellee] Ms. Keefer is not an insured under [the Policy] issued to [Appellees] the Hanns because [Appellee] Ms. Keefer is not a member of [Appellees] the Hanns' household. Both [Appellee] Ms. Keefer and [Appellant] filed [a]nswers to [Appellee] Tuscarora Wayne's [m]otion for [s]ummary [j]udgment.

On May 13, 2015, [Appellant] filed a [m]otion for [s]ummary [j]udgment, along with a [b]rief in [s]upport of [m]otion for [s]ummary [j]udgment and in [o]pposition to [Appellee] Tuscarora Wayne's [m]otion for [s]ummary [j]udgment. [Appellant] asserted that [Appellee] Ms. Keefer is an "insured" because she was a resident relative residing in the farm household. Additionally, [Appellant] alleged that, as a result of the assistance [Appellee] Ms. Keefer provided to [Appellees] the Hanns with the care of horses and upkeep of the farm, she is an insured under Section 9[e.], f., and g. of [the Policy] issued to [Appellees] the Hanns. Oral argument was held on the cross motions for summary judgment on July 27, 2015. On August 14, 2015, based on the parties' arguments, the record, and the law, [the trial court] granted [s]ummary [j]udgment in favor of [Appellee Tuscarora Wayne] and denied [Appellant's] [m]otion for [s]ummary [j]udgment.

(Trial Court Opinion, 10/26/15, at 1-4) (footnotes and record citations omitted).

The instant, timely appeal followed. On September 10, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b) statement on September 25, 2015. *See id.* On October 26, 2015, the trial court filed an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

A. Did the trial [court] err in entering judgment in favor of Appellee, Tuscarora Wayne Insurance Company and against Appellant, Todd M. Souders, Administrator of the Estate of Tina M. Souders, Deceased?

B. Did the trial [court] err in finding that [Appellee] Carol Sue Keefer was not an "insured" pursuant to Section 9E of the Policy even though [Appellee] Carol Sue Keefer cared for horses owned by the named insureds under the policy?

C. Did the trial [court] err in finding that it was unreasonable to extend coverage to [Appellee] Carol Sue Keefer as an "insured" under Section 9E of the [P]olicy notwithstanding the clear language of said section?

D. Did the trial [court] err in finding that it was not the intent of the parties for [Appellee] Carol Sue Keefer to be an "insured" under Section 9E of the [P]olicy notwithstanding the clear language of said section?

E. Did the trial [court] err when [it] interpreted Section 9E of the policy contrary to the clear and unambiguous language of the section and the [P]olicy was a whole?

F. Did the trial [court] err when finding that, if the [P]olicy language is ambiguous, the ambiguity was interpreted in favor of the insurer, Appellee, Tuscarora Wayne Insurance Company?

(Appellant's Brief, at 5) (unnecessary capitalization omitted).

Appellant appeals from the grant of summary judgment in this declaratory judgment action. The applicable scope and standard of review are as follows.

> Our scope of review of an order granting summary judgment is plenary. [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. . . . Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the [fact-finder]. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate [c]ourt may disturb the trial court's order only upon an error of law or an abuse of discretion.

*Stein v. Magarity*, 102 A.3d 1010, 1013 (Pa. Super. 2014) (citation omitted). Further,

> [w]hen reviewing the determination of the trial court in a declaratory judgment action, our scope of review is narrow. As declaratory judgment actions follow the practice and procedure of an action in equity, we will review the determination of the court below as we would a decree in equity and set aside the factual conclusions of the trial court only where they are not supported by adequate evidence. However, when reviewing an issue of law in a declaratory judgment action, our scope of review is plenary and our standard of review is *de novo.*

- 5 -

***Nationwide Mut. Ins. Co. v. Catalini***, 18 A.3d 1206, 1209 (Pa. Super. 2011) (citations omitted).

Appellant first claims that the trial court "committed an error of law by failing to find that the clear and unambiguous language of the Policy demonstrates that the intent of the parties was to provide coverage to [Appellee] Carol Sue Keefer pursuant to Section 9e of the Policy."[2] (Appellant's Brief, at 17). We disagree.

The Policy provides in relevant part:

9. "Insured" means:

    a. "you";

    b. "your" relatives if residents of "your" household;

    c. persons under the age of 21 in "your" care or in the care of "your" resident relatives;

    d. "your" legal representative, if "you" die while insured by this [p]ersonal [l]iability [c]overage. This person is an "insured" only for liability arising out of the "insured premises". An "insured" at the time of "your" death remains an "insured" while residing on the "insured premises";

_____

[2] Appellant addresses his first through fifth questions as one, contrary to our rules of appellate procedure. (***See*** Appellant's Brief, at 17-20); ***see also*** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). Nonetheless, we will address his issues because this discrepancy does not hamper our review. ***See Donahue v. Fed. Express Corp.***, 753 A.2d 238, 241 n.3 (Pa. Super. 2000).

e. persons **using or caring** for vehicles, watercraft, or animals owned by an "insured" as defined under a., b., or c. above and to which this [p]ersonal [l]iability [c]overage applies (This does not include persons using or caring for vehicles, watercraft or animals, in the course of "business" or without the owner's consent.);

f. persons in the course of performing domestic duties that relate to the "insured premises";

g. persons in the course of acting as "your" real estate manager for the "insured premises"; and

h. a person while performing duties as an employee of an "insured" with respect to farm implements and other vehicles covered by this [p]ersonal [l]iability [c]overage.

Each of the above is a separate "insured", but this does not increase "our" "limit".

(The Policy, 4/15/12, at Page 3, Section 9) (emphasis added). The rules of insurance contract interpretation are well-settled.

The task of interpreting [an insurance] contract is generally performed by a court rather than by a jury. The purpose of that task is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. When the language of the policy is clear and unambiguous, a court is required to give effect to that language. When a provision in a policy is ambiguous, however, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage. Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. Finally, in determining what the parties intended by their contract, the law must look to what they clearly expressed. Courts in interpreting a contract, do not assume that its

- 7 -

language was chosen carelessly. Thus, we will not consider merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties.

*Erie Ins. Exch. v. E.L.*, 941 A.2d 1270, 1273 (Pa. Super. 2008), *appeal denied*, 956 A.3d 435 (Pa. 2008) (citation omitted). Further,

[w]ords of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense, and a court may inform its understanding of these terms by considering their dictionary definitions.

Moreover, courts must construe the terms of an insurance policy as written and may not modify the plain meaning of the words under the guise of interpreting the policy. If the terms of a policy are clear, this Court cannot rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used.

*Allstate Fire & Cas. Ins. Co. v. Hymes*, 29 A.3d 1169, 1172-73 (Pa. Super. 2011), *appeal denied*, 46 A.3d 715 (Pa. 2012) (quotation marks and citation omitted).

Here, the dispute lies in the interpretation of the words "using or caring" in Section 9e. The parties do not dispute that Appellee Carol Keefer used and cared for at least some of Appellees the Hanns' horses. (**See** Appellant's Brief, at 17; Appellee Tuscarora Wayne's Brief, at 2). However, Appellant contends that so long as Appellee Keefer used and cared for some of Appellee the Hanns' horses, she is an insured under the policy with respect to all activities. (**See** Appellant's Brief, at 18-20). Appellee Tuscarora Wayne argues that the language of the policy limits the coverage

to the performance of duties related to using or caring for the horses. (***See*** Appellee Tuscarora Wayne's Brief, at 4-8).

Here, Section 9 of the Policy identifies categories of individuals which it defines as an "insured." The first four categories are the most expansive, identifying persons by their relationship to the insured.[3] (***See*** The Policy, ***supra*** at Section 9a, b, c, and d). The final four categories are different; they are defined by the individual's occupation or activity rather than their relationship to the insured, and, therefore they are covered only during the performance of certain duties "using and caring" for horses, "acting" as an estate manager, "performing" housework, *etc*. (***See*** The Policy, ***supra*** at Sections 9e-h).

Appellant contends that the omission of the phrase "in the course of," which is used in Sections 9f and g, means that the Policy intends to treat those covered by Section 9e more expansively.[4] (***See*** Appellant's Brief, at 18-19). In essence, the crux of Appellant's argument is that if an insurer wants a similar limitation in two different sections of the policy, it must use identical language. However, Appellant provides no legal support for this theory. Moreover, Appellant's interpretation inflates policy coverage to the

---

[3] "your relatives," "your legal representative", *etc*. (The Policy, ***supra*** at Section 9b and d).

[4] We note that Section 9h of the policy also omits the phrase "in the course of" but by its language, clearly limits the extent of coverage to the performance of certain duties. (***See*** the Policy, ***supra*** at Section 9h).

point of absurdity; under Appellant's interpretation, a person who sometimes uses or cares for the policy owners' horse would be treated on the same footing as the policy owner. This is simply not reasonable. Rather, we agree with Appellee Tuscarora Wayne that "[s]imilar limiting provisions can be created in different sections by the use of wording that is different but equivalent in its meaning." (Appellee Tuscarora Wayne's Brief, at 5). In Sections 9e-h, the Policy defines a person as an insured solely while performing the duties described in that section.

As the trial court aptly stated:

> [u]nder [Appellant's] interpretation of Section 9e, any individual who regularly cares for an insured's animals has coverage wherever they may go for any liability covered under the [P]olicy. An ambiguity exists in an insurance contract where more than one **reasonable** interpretation of the policy language exists when applied to a particular set of facts. In determining if a contract is ambiguous the [c]ourt must examine the questionable language in the context of the entire policy and decided whether the contract is reasonably susceptible of different constructions and capable of being understood in more than one sense. While it is apparent that [Appellant's] interpretation of Section 9e differs from that of [Appellee] Tuscarora Wayne's, [Appellant's] view of Section 9e is not a reasonable one. Viewing the language of 9e in the context of the entire policy, it is clear that there was no intent to grant [p]ersonal [l]iability [c]overage to any individual who cares for [Appellee] the Hanns' horses. A reasonable interpretation of Section 9e would be to extend coverage only to those currently caring for animals if the liability stems for such care. Thus, had [Appellee] Ms. Keefer injured another while engaging in caring for [Appellee] the Hanns' horses, she may have fallen under the purview of Section 9e; however, this is not the case. Therefore, [Appellee] Ms. Keefer is not an insured under the terms of Section 9e.

(Trial Court Opinion, 8/14/15, at 12) (citations and quotation marks omitted, emphasis added). We agree. Because Appellant's interpretation of the language of Section 9e is unreasonable, his first five claims lack merit. **See Allstate Fire & Cas. Ins. Co.**, **supra** at 1172-73.

In the final claim, Appellant contends that the trial court erred "when finding that, if the policy language [was] ambiguous, the ambiguity was interpreted in favor of the insurer[.]" (Appellant's Brief, at 20) (unnecessary capitalization omitted). However, Appellant has waived this claim. Appellant fails to cite to, and we have been unable to locate, any point in the trial court's opinion where it found the Policy language to be ambiguous.[5] Further, Appellant does not provide any explanation for his conclusion that the trial court found the Section 9e of the Policy to be ambiguous. It is not this Court's responsibility to comb through the record seeking the factual underpinnings of Appellant's claim. **See Commonwealth v. Mulholland**, 702 A.2d 1027, 1034 n.5 (Pa. Super. 1997) ("In a record containing thousands of pages, this court will not search every page to substantiate a party's incomplete argument") (citation omitted). Further, it is long-settled that failure to argue and to cite any authority supporting the argument constitutes a waiver of the issue on appeal. **See Jones v. Jones**, 878 A.2d

_____

[5] Rather, as quoted above, the trial court stated that, while the two parties had differing interpretations of Section 9e, Appellant's interpretation was unreasonable, and therefore it did not find any ambiguity. (**See** Trial Ct. Op., 8/14/15, at 12).

86, 90 (Pa. Super. 2005). This Court will not act as counsel and will not develop arguments on behalf of an appellant. *See Bombar v. West Am. Ins. Co.*, 932 A.2d 78, 94 (Pa. Super. 2007). When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we can dismiss the appeal entirely or find certain issues to be waived. *See* Pa.R.A.P. 2101. Because Appellant has failed to provide any support for his claim that the trial court found the policy to be ambiguous, he has waived the claim. *See id.*; *Bombar*, *supra* at 94; *Jones*, *supra* at 90.

Accordingly, for the reasons discussed above, we affirm the grant of summary judgment in favor of Appellees.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/7/2016

- 12 -